[Crim. No. 6575. Second Dist., Div. Three. Sept. 14, 1959.]

THE PEOPLE, Respondent, v. JAMES CAMPBELL GAITHER, Appellant.

Barbara Warner for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Philip C. Griffin, Deputy Attorney General, for Respondent.

SHINN, P. J.—James Campbell Gaither appeals from a judgment of conviction of seven violations of section 216 of the Penal Code[1] in that he administered poison (arsenic) to Mary Norris Gaither, Rosemary Norris, Mary Urias, Alvina Urias, Timothy Urias, Alex Urias and Adolph Urias with intent to kill said persons, by which death was not caused. He also appeals from an order denying his motion for a new trial.

Mary Norris (Gaither) married defendant in 1957 and obtained a divorce from him in May 1958. Her mother and father are Mary Urias and Adolph Urias. She and defendant have a daughter, Rosemary Norris, aged 2; Mary and Adolph Urias have three minor children, Alvina, Timothy and Alex. On April 4, 1958, the three children and Rosemary Norris were living in the Urias home at 4482 Tuttle Street in Los Angeles. Mary Norris had her mail sent to this address in

---

[1] "Administering Poison. Every person who, with intent to kill, administers, or causes or procures to be administered, to another, any poison or other noxious or destructive substance or liquid, but by which death is not caused, is punishable by imprisonment in the State Prison not less than ten years."

care of her mother, who had authority to open it. On April 1st or 2nd, 1958, a package was mailed from Taft addressed to "Mary D. Norris 4482 Tuttle Street, Los Angeles 23, California." The return address read: "Abbie Copus, Rural Route, Mariposa, California." The package contained four Easter bunnies and a quantity of peanut brittle which had been melted and reshaped into a single mass. It contained enough arsenic to kill 75 persons. The foregoing facts were established by uncontroverted evidence. Although defendant denied upon the stand that he sent the package there was convincing evidence that he did send it and it is not contended on the appeal that there was insufficient evidence to prove that fact.

Mrs. Urias ate some of the candy and gave some to Alvina, Timothy and Rosemary, who ate it. All became violently ill but recovered. Mary Norris, Adolph and Alex ate none.

With this brief statement of the evidence we pass to the points on the appeal.

The first contention is stated thus: "No STATE OFFENSE TO SEND POISON CANDY THROUGH MAILS Congress Preempted Legislative Authority Over Mailing Poison By Enactment Of 18 USCA 1716." This statute makes it a penal offense to deposit for mailing or delivery poison or poisonous articles or compositions, with intent to kill, etc. The contention is untenable. The federal statute relates only to the mailing or delivery of nonmailable articles and substances. It does not purport to make a federal offense of all attempts to kill by means of poison. Mailing is not the subject of the state statute. The information did not charge the commission by defendant of acts which would have constituted violation of the federal statute.

The second point is: "INSUFFICIENCY OF THE EVIDENCE Mailing Poison Candy To One Person Is Not Administering To Other Persons." The contention is summarized in the statement: "There is no evidence that defendant did anything beyond mailing the package to his wife, Mary Norris. Such mailing did not constitute administering the poison, because the addressee did not eat any." The point stressed is that the poisoned candy was "administered" by Mary Urias on her own responsibility and was not the act of the defendant. The contention is unrealistic. It assumes that if defendant administered poison to anyone it was to his divorced wife and that it was no part of his plan or the anticipated consequences of his act that anyone else would eat the candy. No

mention is made of the evidence which shed light upon defendant's purpose in sending the candy. It is not asserted that he expected that Mary Norris would consume one and a half pounds of candy or that she would keep the four Easter bunnies. There was evidence that within two weeks preceding the sending of the package defendant telephoned Mary Urias and threatened to run over her children as they went to school; he made another threat to her over the telephone that he intended to get a gun and "shoot the whole Urias family." He called again, on two occasions, spoke to his father-in-law, Adolph Urias, and threatened to kill him. He talked to Alex, aged 9, on the phone and threatened to kill him and his brother and sister. Shortly after the candy was received defendant called and spoke with Alvina, asking how Rosemary was and the next day called to ask how everybody was. He also drove by the house but made no attempt to communicate with Mr. Urias, who was outside. In view of this evidence, to which the jury presumably gave full credit, there was no reason to doubt that the poisoned candy and the Easter bunnies were sent to Mary Norris with the intention they would be distributed throughout the household. Thus the poison was administered to those who partook of it as effectively as if it had been handed to them personally. The acts of Mrs. Urias in distributing the candy as planned and expected by defendant were his acts insofar as they accomplished his purpose.

The next point is that the court erred in giving the People's instruction that "administer" means "to dispense, to supply, to give out, to distribute, to furnish" and that the word has not a legal or technical import, but is a word in general use with a common and accepted meaning, the primary definition being "to give." Defendant maintains that "administer" means something more than "give"; to give someone a poison is not to administer it unless it is taken into the system, even though the intention is that it will be swallowed; the poison was not administered to those who ate none of the candy, namely, Mary Norris and Adolph and Alex Urias. We are constrained to agree. If all the candy had been thrown away defendant would not have committed a violation of section 216 (see *State* v. *Stapp*, 246 Mo. 338 [151 S.W. 971]; *Miller* v. *State*, — Okla. Crim. — [281 P.2d 441]; *Leary* v. *State*, 14 Ga. 797 [82 S.E. 471], although he would have been guilty of an attempt to violate it.

"Administer" in the sense intended by section 216

is a word that is commonly employed in connection with the use of drugs. For illustration, it means something more than "prescribe" or "furnish" in connection with the use of narcotics, which a physician may "prescribe, furnish, or administer" in some cases. (Health & Saf. Code, § 11330.) Section 216 has application to cases in which poison is introduced into the system with intent to kill and which causes injury short of death. Defendant requested and the court refused an instruction that "administer" means "to furnish, to give, to direct and cause it to be taken." The instruction should have been given.

The court could have instructed that the poisoned candy was administered to those who partook of it if defendant mailed it with intent that it would be distributed among and eaten by the members of the Urias household. With respect to the three persons who ate none of the candy the definition of "administer" was erroneous in making it applicable to them. As to the others there was no harm, inasmuch as there was convincing and uncontradicted evidence that they ate some of the candy, became violently ill and required medical attention.

 The next point to be considered is that since there was but one act of mailing there was but one offense committed. The proposition is unacceptable on its face. Defendant, having issued threats of wholesale murder, mailed poisoned candy expecting it to be distributed among and eaten by seven people; the circumstances were such as to make it almost certain that it would be distributed and eaten by several, perhaps all; four ate of the candy and three did not. Why should the law intend or a court adopt a policy of leniency and punish defendant as for a single crime when he would have been three times a murderer if he had run over and killed three of his victims as he had threatened to do.

In *People* v. *Alibez,* 49 Cal. 452, it was held that an indictment charging the death of three persons from poison administered to them upon a single occasion accused the defendant of three offenses of murder. It has always been the law in this jurisdiction that in crimes of violence a single act constitutes a separate offense against each person injured by the act. In *People* v. *De Casaus,* 150 Cal.App.2d 274 [309 P.2d 835], the court affirmed six convictions of involuntary manslaughter where six persons had been killed in a single act of the unlawful operation of an automobile. We refer to

the court's opinion for a list of supporting authorities. Defendant was properly convicted of four offenses.

The next contention is that the court should have given an instruction that would have permitted defendant's conviction of a claimed included offense of violation of section 347, Penal Code.[2]

Simply stated the rule of included offenses is that where one offense cannot be committed without committing another, the latter is included in the former.

In the present case, although the poison was mixed with candy, the information did not allege that it was mixed with food and therefore did not allege facts which would constitute a violation of section 347. (See *People* v. *Marshall*, 48 Cal.2d 394, 405 [309 P.2d 456].) It is not an essential element of violation of section 216 that the poison be mixed with food. An instruction that the defendant could be convicted of violation of section 347 would have been improper.

The next contention of defendant is that he was not adequately represented by counsel at the trial and that it was error for the court to deny his motion for a change of attorneys. Defendant was represented prior to trial by a deputy public defender who was relieved, as shown by the minutes, because of a conflict of interests between defendant and the office of the public defender. Thereafter another attorney was appointed under section 987 of the Penal Code. The trial did not commence until 30 days after counsel was appointed. Four days were devoted to the receipt of evidence. Four days later, at the time set for argument, defendant's present counsel appeared and made a motion that she be substituted in place of the attorney who had acted throughout the trial; also a motion for an order of mistrial upon the ground that defendant had been denied his constitutional right to be represented by counsel by reason of the incompetent manner in which the defense had been conducted; also in lieu of a mistrial a motion for a continuance to permit new counsel to read the transcript of the evidence, study the exhibits and prepare affidavits in support of a motion to reopen the trial, and also a motion, if the foregoing motions should be denied, to reopen the trial for the receipt of further

---

[2]"Willfully Poisoning Food, Medicine, Or Water. Every person who willfully mingles any poison with any food, drink, or medicine, with intent that the same shall be taken by any human being, to his injury, and every person who willfully poisons any spring, well, or reservoir of water, is punishable by imprisonment in the State Prison for a term not less than one nor more than ten years."

evidence. All motions were denied; arguments were presented, the trial was concluded and verdicts were rendered without change of attorneys.

The claim of error in the denial of the motion for change of attorneys proceeds upon the theory that defendant did not receive competent representation at the hands of the appointed attorney, and also upon the theory that he had an absolute right to discharge one attorney and engage another at any stage of the trial. Neither theory is tenable.

In moving for a substitution of attorneys defendant's present counsel made general assertions that defendant had not been able to consult with his attorney during the trial and that material evidence that was available had not been used. It was stated "Also there has been an appearance of intoxication on the part of counsel for the defendant." The latter statement was irresponsible and was promptly and forcefully refuted by the court and the deputy district attorney. The vague accusations of incompetence were no doubt based upon statements of defendant to the attorney. It should be mentioned in this connection that prior to the trial defendant had been examined by a court appointed physician with respect to his mental condition and that the report of the examination stated in part: "He is a borderline mental defective with considerable emotional instability." It is stated in his brief: "He was a borderline mental case and was denied his right of counsel, and was denied a fair trial." The brief also describes present counsel as "a young woman attorney of limited experience before the Bar." We would have suspected as much. The tactics employed were original. The irresponsible complaints of a mentally defective client furnish no support for accusations of incompetence and misconduct against an attorney of good standing and known ability. It was so largely the province of the trial court to decide whether the defendant was given proper representation that before a reviewing court could overrule the decision the record would have to show beyond a doubt that it was in grievous error. The record shows the contrary. The defense was conducted in a competent and skillful manner. The criticism directed against the attorney was unwarranted.

As a rule an accused has a right to represent himself or to representation by an attorney of his own choice. (*Powell* v. *Alabama*, 287 U. S. 45 [53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527] ; *People* v. *McGarvy*, 61 Cal.App.2d 557 [142 P.2d 92] ; *People* v. *Avilez*, 86 Cal.App.2d 289 [194 P.2d 829] ; *Reynolds*

v. *United States* (9th Circuit) 267 F.2d 235, June 1, 1959.) However, the right is one that must be exercised seasonably and not through mere caprice. ██ The application we are considering could not have been granted without an unwarranted disruption of the trial. To have held the jury in attendance while a new attorney studied the evidence and prepared argument or perhaps explored the tenuous possibilities of unearthing additional evidence would have been highly irregular. To have granted the substitution and permitted argument by the new attorney who was a stranger in the case and wholly unfamiliar with the record would have been a disservice to defendant. In the preliminary stages of the proceedings defendant was represented by the office of the public defender and he was represented by an experienced deputy public defender at the time set for trial. Defendant, evidently dissatisfied with his representation, made a motion for release "to do his own investigating" and a motion to be appointed co-counsel, which motions were denied. The cause was continued one month for trial and the public defender was relieved as defendant's attorney. Another continuance was granted for appointment of counsel under section 987 of the Penal Code; other counsel was appointed and the cause was continued for another month. In the meantime defendant had been given an examination by a court appointed physician with respect to his mental condition with the result previously mentioned. The right of defendant to be represented by counsel was duly observed and he was represented better than would have been the case if he had been pampered by permitting him to control the conduct of his defense. The motions were properly denied.

██ The final contention relates to the absence of transcriptions of certain tape recordings. The People played in evidence several tape recordings of interviews between defendant and police officers. On motion of the deputy district attorney the tapes were received in evidence and the court reporter was directed not to transcribe the recordings. It is contended that this direction to the reporter and the failure to make transcriptions of the recordings constituted prejudicial error. We are of the opinion that the transcriptions should have been made in order that their accuracy could be attested by the court. If they were to become a part of the record on appeal a reviewing court should be able to know to a certainty the evidence they furnished at the trial rather than to be required to replay them and place upon them its

own interpretation, which might possibly differ from the one that would have been attested by the trial court. But we fail to see how defendant could have been prejudiced. Defendant's attorney did not request that transcriptions be made and registered no objection to the procedure. It does not appear that the jurors or the parties had need for transcriptions. If they had been needed and had been requested the court no doubt would have ordered them made. They have not been shown to be necessary for consideration on the appeal. If transcriptions had been desired as a part of the record on an appeal application should have been made to this court under rule 33(b) or rule 12(a), Rules on Appeal. No such application has been made. This claim of error is untenable. (See *People* v. *Eads,* 124 Cal.App.2d 393 [268 P.2d 561].)

The gravamen of the offense of violation of section 216 is the administration of poison with intent to kill. The evidence which established that the poison was administered to four persons proved also that defendant was guilty of an attempt to administer it to the three persons who ate none of the candy. The attempts were included offenses of which he could have been found guilty. (Pen. Code, § 1159.)

Pursuant to section 1181, subdivision 6, of the Penal Code, the judgment as to Count I (Mary Norris Gaither), Count VI (Alex Urias), and Count VII (Adolph Urias), is modified to convictions of attempt to violate section 216, Penal Code; the cause is remanded and the court is directed to enter judgment of conviction as to said counts of attempts to violate section 216 and to sentence the defendant as required by law. The judgment is affirmed as to Count II (Rosemary Norris), Count III (Mary Urias), Count IV (Alvina Urias), and Count V (Timothy Urias). The order denying motion for a new trial is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied October 1, 1959, and appellant's petition for a hearing by the Supreme Court was denied November 10, 1959. Schauer, J., was of the opinion that the petition should be granted.