[Crim. No. 1291. Fourth Dist. Apr. 26, 1961.]

THE PEOPLE, Respondent, v. DOUGLAS DARRELL CARLYON, Appellant.

Dean R. Pic'l for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

GRIFFIN, P. J.—Defendant Carlyon appeals from a judgment of conviction, after jury trial, of violations of Health and Safety Code, section 11530 (possession of marijuana) and section 11531 (furnishing and giving away marijuana) and from the order denying a motion for a new trial.

On February 3, 1960, Mrs. Petty, an undercover investigator for the sheriff's office, had a conversation with Carlyon. He told her that he was going to Los Angeles that day and she asked him if he would bring her "something" from Los Angeles. Carlyon's response was, "I don't have to bring it back. I got the grass right on me." Later that day, before his departure for Los Angeles, Mrs. Petty met Carlyon at an apartment which he had apparently been using, where he gave her 14 marijuana cigarettes which she later turned over to a sheriff's sergeant. On the following Saturday, February 6, Carlyon invited Mrs. Petty to a party at his apartment that night. She attended, carrying a radio transmitter concealed in her purse. Donald Morgan, Mrs. Warren and Carlyon were there when she arrived. They listened to records, and after a while Carlyon produced some marijuana cigarettes and gave one to each of the persons in the room. Donald

Morgan was somewhat ill and smoked very little, if any, of his cigarette. The other three persons lighted several marijuana cigarettes and passed them back and forth among them. Mrs. Petty only pretended to smoke the cigarette which had been given to her. Meanwhile, Sergeant Dodd and three deputy sheriffs waited outside the apartment listening to the conversation therein on their radio apparatus and recording it. After Mrs. Petty gave a prearranged signal indicating that narcotics were being used inside the apartment, the officers entered. A search revealed a partially burned marijuana cigarette on the speaker screen of a record player near the place where Carlyon was sitting when the officers entered. Another partially burned marijuana cigarette was found in a vial on the day bed upon which Donald Morgan had been lying. A bottle and a can containing marijuana debris were found in the yard at the rear of the apartment.

Neither appellant nor his codefendant Morgan testified and no substantial evidence was presented by the defense. The jury verdict found appellant guilty as to both counts but was unable to agree as to the guilt of Morgan who was charged with possession of marijuana.

Appellant's only contention on this appeal is that he was denied his constitutional right to counsel at the trial.

At the initial arraignment on March 17, 1960, appellant and his codefendant Morgan were represented by the attorney (hereinafter referred to as "trial attorney") who continued to represent them at all subsequent proceedings until the conclusion of the trial. His trial attorney had previously represented the appellant at his preliminary hearing. The record indicates that appellant was arrested on February 6, 1960, released on bail on March 1, 1960, and remanded to custody at the conclusion of his trial on July 21, 1960. A motion to dismiss the information under Penal Code, section 995, was denied; not-guilty pleas were entered and the trial was set for May 3, 1960. Subsequently, at appellant's request, the trial date was continued until June 13, 1960, and again to July 18, 1960. On the latter date, the trial began, a jury was selected, an opening statement was made by the prosecution, and the prosecution began presenting its case to the jury. At the conclusion of the first day of trial, the prosecution had completed its direct examination of the first witness, Mrs. Petty, and the defense had not yet begun cross-examination. Appellant's trial attorney then requested a transcript of part

of Mrs. Petty's direct examination and this request was granted.

According to subsequent statements of appellant's counsel on appeal, during the evening following the first day of trial, he was contacted by appellant and his family and asked to advise them concerning the defense of appellant's trial. Apparently they were dissatisfied with the manner in which appellant's trial attorney was conducting the defense. According to his statement to the trial court, appellate counsel traveled to Bakersfield on the following morning. During that day he did not communicate with appellant's trial attorney or the judge who was conducting the trial, although he did observe a part of the proceedings as a spectator. Thereafter appellate counsel sought advice from the presiding judge of the criminal department of the Superior Court of Kern County.

But it was not until the next morning, the third day of the trial, that appellate counsel informed the trial judge and appellant's trial attorney of appellant's dissatisfaction with the conduct of his defense. As then stated by appellate counsel, the causes of this dissatisfaction were twofold: first, that appellant and his trial attorney were unable to agree as to whether the defense should proceed upon the theory of entrapment or upon the theory that the defendant had not committed the offenses charged; secondly, that there was a conflict of interest between the appellant and his codefendant Morgan making it impossible for the same attorney to represent both defendants. It was alleged that the trial attorney represented Morgan in a civil suit and that he was conducting the defense so as to protect the personal injury suit, at appellant's expense. The trial attorney vigorously denied the latter allegation, stating that although he had filed a claim against the county on Morgan's behalf, he had not been retained to represent Morgan in a personal injury action. He further stated that he had filed this claim at the request of appellant's mother with Morgan's consent. On this appeal, it is not contended that appellant's interests were sacrificed in order to protect Morgan's supposed action for personal injuries.

In response to the contention that appellant and his trial attorney could not agree as to the defense to be presented, the trial attorney stated generally that this was true and that the cause of the disagreement was that appellant's family vacillated from one defense to another. He also observed that

the situation was hampering his defense of Morgan and asked to be relieved of appellant's defense and allowed to continue as attorney for Morgan. It was pointed out that the prosecution had almost completed presenting its case. The court then suggested that it was disposed to permit appellant to substitute attorneys, allow the prosecution to complete its case, and grant a continuance of four days until the following Monday, at which time the defense would commence presenting evidence. Appellate counsel stated that he was free for the intervening time and could devote his entire attention to the preparation of a defense, but said that he did not feel that he could enter the case in the middle of the trial and adequately protect appellant's interests. He asked that a mistrial be declared as to appellant and that the case be reset for another time, preferably at least three weeks later. The trial court refused to grant a mistrial and, in view of appellate counsel's refusal to undertake appellant's defense on the terms previously offered by the court, ordered the trial to continue.

At the outset of the defendants' case-in-chief, a conference was held in chambers in the presence of the judge, counsel and the defendants. Defendants' trial attorney pointed out that it was difficult for him to advise the defendants as to whether they should take the stand because their testimony might be conflicting. The court then advised the defendants that they could testify if they desired to do so, but that they were not required to do so. It was pointed out that if they did take the witness stand they could be cross-examined, and that if they did not take the witness stand the prosecutor could comment upon that fact in his argument to the jury, and the court might instruct the jury as to the ''effect'' of their failure to take the witness stand.

Appellant contends that the conduct of his trial attorney virtually amounted to a denial of counsel, in that the attorney actually based the defense on the theory of entrapment, whereas the appellant preferred to deny that he had committed the offense charged. It is also contended that appellant took all reasonable steps to bring his dissatisfaction with trial counsel to the attention of the court and that he was denied an adequate opportunity to correct his dissatisfaction with counsel.

These contentions are without merit. ''The right to the assistance of counsel guaranteed by the constitutional and

statutory provisions, like any other legal right, may be invoked only in the course of orderly procedure." (*In re Connor*, 16 Cal.2d 701, 709 [108 P.2d 10].) Appellant personally selected and employed his trial attorney. Appellant does not explain why he did not discuss his possible defenses with his attorney before his trial. This would seem to be one of the first subjects which a client would discuss with his attorney.

Appellant's trial attorney represented him at the preliminary hearing and at several proceedings in the superior court prior to the commencement of the trial. Appellant was released on bail over four months before the trial began and was therefore free to personally see to the preparation of his defense and consult with other attorneys of his own choosing if the attorney he had previously selected was unsatisfactory to him for any reason. Appellant attempts to explain the failure to settle this alleged disagreement between himself and his counsel before the trial by saying that he was "led" into the defense of entrapment despite the fact that he had not committed the crime. More convincing is the statement of the trial attorney that appellant vacillated from one defense to another. But even if appellant's version is accepted, it would not follow that he was deprived of his constitutional right to counsel. Reliance on bad advice of retained counsel is not enough to vitiate a plea of guilty entered in reliance thereon. (*People* v. *Martinez*, 88 Cal.App.2d 767 [199 P.2d 375]; *People* v. *Grgurevich*, 153 Cal.App.2d 806 [315 P.2d 391].) The same rule has been applied where defendants failed to take the stand or made a choice of defenses relying upon the advice of their attorneys. A defendant may not claim error because his attorney exercised his own judgment and rejected the suggestions of the defendant during the trial. (*People* v. *Logan*, 137 Cal.App.2d 331 [290 P.2d 11].)

 "One who has had representation by counsel of his own choice and an unhampered opportunity to prepare and present his defense has not been deprived of his constitutional right to the aid of counsel." (*People* v. *Morton*, 100 Cal. App.2d 269, 271 [223 P.2d 259].)

Appellant complains that the conduct of his trial attorney was such that he was virtually denied the right to counsel. We are convinced that such was not the case. Although appellant contends that *People* v. *Davis*, 48 Cal.2d 241 [309 P.2d 1], applies, we are convinced that the facts of that case

can be readily distinguished from the facts of the instant case. In that case, counsel was afflicted with a mental illness and his actions were unusual and explainable only on the basis that his illness affected his handling of the case. In *People* v. *Gaither*, 173 Cal.App.2d 662, 670-671 [343 P.2d 799], involving a situation analogous to the instant case, it was held that the trial court properly refused to grant a mistrial because the defendant desired to retain other counsel. The court there said:

"As a rule an accused has a right to represent himself or to representation by an attorney of his own choice. [Citing cases.] However, the right is one that must be exercised seasonably and not through mere caprice. The application we are considering could not have been granted without an unwarranted disruption of the trial."

 It has been held that, under circumstances similar to those here presented, it is not necessary to grant a continuance to enable newly proffered counsel to acquaint himself with the case and assume the defense. (*People* v. *Gaither, supra*; *People* v. *Shaw*, 46 Cal.App.2d 768 [117 P.2d 34]; *People* v. *Simeone*, 132 Cal.App.2d 593 [282 P.2d 971].) Here, the court, probably to protect the codefendant Morgan's interests in an unfortunate situation not of his making, offered such a continuance to appellant. He refused it and cannot now claim that his request to substitute counsel was refused. Nor does the record show that the trial attorney's handling of the case was unskillful. He moved to dismiss the information under Penal Code, section 995, and made objections to the introduction of evidence. His cross-examinations of the witnesses presented were thorough and perceptive. The final argument made for the defense was not merely adequate but of an exceptional quality. We are convinced that appellant's defense was not hindered by the ability or actions of his trial attorney. It is apparent that appellant himself decided not to testify on his own behalf. He cannot now complain that this decision was unwise.

The motion for a new trial was properly denied. No sufficient grounds for granting the motion were presented. (*People* v. *Logan, supra*, 137 Cal.App.2d 331.)

The judgment and order are affirmed.

Shepard, J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 21, 1961.