[Crim. No. 10182. Second Dist., Div. Four. Apr. 11, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. JOE WILLIE JOHNSON, Defendant and Appellant.

Bernard Lauer, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Charles A. Collins, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged with four counts of robbery and one count of kidnaping for the purpose of robbery. The information charged that he was armed at the time of the commission of each of the robberies. Four prior felony convictions were alleged. Defendant pled not guilty and denied the priors; subsequently a plea of not guilty by reason of insanity was also entered. After proceedings under section 1368 et seq. of the Penal Code, defendant was found to be presently insane, the criminal proceedings were suspended and, on June 17, 1963, he was committed to Atascadero State Hospital. On January 13, 1964, the superintendent and medical director of the state hospital having certified that defendant was then sane, the criminal proceedings were resumed. Sundry continuances followed and defendant was finally brought to trial on March 12, 1964. The priors were admitted outside the presence of the jury. After a jury trial, lasting four days and two days of jury deliberations, defendant was found sane at the time of the alleged offenses; he was found guilty on three robbery counts and on the count of kidnaping for the purpose of robbery; he was found to have been armed at the time of all counts except one of the robbery counts. A motion for new trial was denied, probation was denied and defendant was sentenced to state prison on the four counts on which he was found guilty, the sentences to run consecutively. Defendant has appealed.[1]

[1]The record contains three notices of appeal, all executed by defendant in propria persona. Two are handwritten, one is typed. The first is phrased as an appeal ''in regards to'' the case; the second is an appeal from the judgment and from the order denying new trial; the third is an appeal from the judgment only. We dismiss the attempted appeal from the order denying new trial (Pen. Code, § 1237).

Since no issue is made of the sufficiency of the evidence, it is unnecessary to set out the facts of the alleged offenses, other than to point out that the robbery charge in Count I (of which defendant was convicted) involved the same episode and the same victim as the kidnaping count.

## I

On this appeal, defendant urges that, under Penal Code section 654, the court erred in sentencing him on both the robbery and kidnaping count, and that, under Penal Code section 669, the sentences on the robbery counts should have been made to run concurrently with the life sentence on the kidnaping count. He further urges that, in view of *People* v. *Holman* (1945) 72 Cal.App.2d 75 [164 P.2d 297], *People* v. *Tucker* (1954) 127 Cal.App.2d 436 [273 P.2d 934], and *In re Rye* (1957) 152 Cal.App.2d 594 [313 P.2d 914], it was also error to make the robbery counts run consecutively with each other. The Attorney General concedes the first two contentions and we need not determine the third. Presumably, if defendant is again convicted on these counts, the problem will not recur.

## II

Defendant's other contention, and one which we hold compels a reversal, is that it was prejudicial error, denying defendant a fair trial, for the court to have ordered that defendant be muzzled, before the jury, for one trial day and parts of two others.

The restraint and gagging of the defendant resulted from the following sequence of events. On March 11, 1964, the case was called for trial. While the prospective jurors were in the courtroom, the following conversation took place between the court, the attorney for defendant, and the defendant.

"The Court: Let's go right ahead with the People against Johnson, gentlemen.

"Mr. Arthur: Your Honor, the defendant is in custody.

"The Court: All right.

"Mr. Arthur: The defendant is ready, Your Honor.

"The Court: Let's go right ahead.

"Mr. Arthur: Your Honor, at the Court's discretion, may counsel approach the bench—

"The Court: Yes, sir.

"Mr. Arthur:—with the reporter, please?

"The Court: Yes.

"Mr. Arthur: May the defendant approach, also, your Honor?

"THE DEFENDANT: Your Honor, at this time the defendant does not wish to approach the bench. I—

"THE COURT: Wait a minute. Don't talk. I will have counsel there.

"If you—

"THE DEFENDANT: I would like to address the Court, sir.

"THE COURT: What?

"THE DEFENDANT: I would like to address the Court. It is very urgent.

"THE COURT: Read the statement, please.

" (Statement of the defendant read.)

"THE COURT: I don't want to take statements in front of the jury and you are also there with counsel.

"THE DEFENDANT: Your Honor, —

"THE COURT: Take the jury outside. Get them out of here, if you will, please.

"THE DEFENDANT: The defendant has been—they defrauded the defendant in this case. That is one reason why they are dismissing it, too.

"THE COURT: I will have to get a whole new panel, and I am going to have to have him muffled if you talk up any more in court.

"If you talk any more, I will have to have him muffed [sic] so that he can't talk. That is what I'm going to do if you get out of line.

"I mean—I mean it. You keep still and you talk to your counsel or I will have you muffed. [sic]

"You won't talk in this courtroom. You do this again in front of this jury, I mean that.

"It has been done before, it will be done again.

"I'm not the only judge does that. You can't talk out of line in here.

"You have a very capable lawyer and you talk through him.

"Call for a new panel, if you will, please.

"Now, gentlemen, step around here with the reporter.

"MR. FEIFER: Perhaps we can do it here. There is no jury here.

"THE COURT: All right. Excuse me.

"There is no jury here. Go ahead and make your statement. I didn't realize that.

"Now talk up.

"MR. ARTHUR: Your Honor, if I may very briefly address the Court.

"As this Court may or may not be aware, prior to this date, the defendant—

"THE COURT: You can sit down. I mean your client can sit down.

"MR. ARTHUR: Why don't you sit over here?

"THE COURT: Now go ahead.

"MR. ARTHUR: Prior to this date, the defendant was adjudged to be legally insane by Judge Coleman in Department 107. He was committed to the State Hospital at Atascadero.

"THE COURT: Now that was when, Mr. Arthur?

"MR. ARTHUR: That was approximately, seven months ago, sir, six or seven months ago.

"THE COURT: What case was that? I have two cases.

"MR. ARTHUR: That is on both of these cases here.

"THE COURT: And that was on the basis that he what? Under that section he was presently—

"MR. ARTHUR: Was presently insane.

"THE COURT: All right.

"MR. ARTHUR: That he was returned from Atascadero in January of this year with the statement from the hospital that the defendant was able to go to trial; that it is my opinion from talking with the defendant that I believe he is able to go to trial, in my opinion.

"I would like to proceed. However, because of what happened a few moments ago, I don't know whether it would be out of order to have the defendant re-examined again at this time.

"I again, and it is my opinion, it is a layman opinion, but it is the opinion of his counsel, myself, that we are ready and he is prepared and is able to understand the proceedings against him.

"THE COURT: When was he returned from the State Hospital, Mr. Arthur?

"MR. ARTHUR: It is on file, sir.

"I can't give you the exact date.

"THE COURT: All right. I will check it.

"January 13th of 1964, apparently.

"Well, I'm going to deny the request.

"I think we should go to trial in this matter.

"He has been returned from the State Hospital, and the request is denied.[2]

---

[2]It is not here contended that defendant's conduct was such as to require the trial court to entertain a doubt as to present sanity and suspend the trial for a second hearing on that issue. In the light of the

428

"Mr. Arthur: Your Honor, at this time with the Court's permission, the defendant will admit the priors charged against him.

"That was the original reason for wishing to approach the bench.

"The Court: Well, all right."

There followed a short discussion between the court and counsel concerning the proper numbering of the counts in the consolidated information. The court then returned to the matter of the priors, at which point defendant again interrupted the proceedings and the following occurred:

"The Defendant: I will not go to trial with this man.

"You all know you defrauded me all the way down, you defrauded me.

"Mr. Arthur: Your Honor, may I have a moment with the defendant? May I have just a moment with the defendant?

"The Court: Yes.

" (Counsel Arthur talking with the defendant.)

"" (New prospective jurors entered the courtroom.)

"The Bailiff: Shall I keep them out?

"The Court: Yes, just a few minutes, ladies and gentlemen.

"Mr. Arthur: Your Honor?

"The Court: Yes, sir.

"Mr. Arthur: The defendant is worried because of the fact that he feels that some of the psychiatrists that examined him and some of the reports that Judge Coleman initially took into consideration at the time that he found him to be legally insane will not be brought, so to speak, to light in this case.

"I would like to state for the record and, Mr. Johnson, this is going on record, the reporter is taking it down, that all of the reports, the former reports made by psychiatrists and the psychiatrists that made them I will place those psychiatrists under subpoena because I'm raising the issue of insanity, that is part of your defense, and I am raising it.

"But I have got to raise it at a proper time, and all we are doing right now is getting ready to pick a jury.

"But as a matter of record, all of the previous reports concerning you, if they are legally admissible, will be made a part of the record in this proceeding and the psychiatrists, all of the psychiatrists that examined you, will be placed under sub-

statement by defense counsel and the comparative recency of the certification of present sanity by the Superintendent at Atascadero, the determination to proceed with the trial seems proper.

poena and they will be made witnesses for the defense in your behalf.

"THE COURT: That is a fair statement.

"All right, gentlemen.

"Shall we bring in the jury?

"MR. ARTHUR: Your Honor, —

"MR. FEIFER: Your Honor, —

"MR. ARTHUR: —there is still the matter of the priors.

"MR. FEIFER: —the priors.

"THE COURT: All right. Go ahead.

"MR. FEIFER: Also, I wonder if the defendant has any statement to make at this time before the Court.

"Perhaps he should be asked to take it now before the jury comes in.

"THE COURT: No, I will not take the statement from him. He has capable counsel. He must speak through his counsel.

"I will not disjoint this in any way. He will speak through his counsel.

"MR. FEIFER: Joe Willie Johnson, is that your true name?

"THE DEFENDANT: (No oral response.)

"(Counsel Arthur talking to the defendant.)

"MR. ARTHUR: The defendant wishes to indicate that he wishes to stand moot. [sic]

"MR. FEIFER: Is there any indication at this time that he wishes to admit the four priors in the alleged information?

"MR. ARTHUR: Well, as protection for the defendant, I would state for the record that it is my advice to the defendant to admit the prior—the allegations of prior convictions of felonies.

"I do not wish them brought before the jury as I don't believe I'm going to put the defendant on the stand in his own behalf.

"THE COURT: Of course, the admission or denial should be from the defendant.

"If the defendant remains moot, [sic] it would be the duty of the Court to take or order the clerk to enter a denial. I think that is the law.

"(Counsel Arthur talking with the defendant.)

"THE DEFENDANT: I tell you, you go on ahead with the case. I mean anything you want me to do, I will do, because you all are running it and you know you defrauded me.

"MR. ARTHUR: All right.

"I'm telling you as your counsel—

"THE DEFENDANT: Anything else—

"MR. ARTHUR: —to—telling you to admit the priors.

"THE DEFENDANT: I will do anything.

"THE COURT: You admit you say—what was that statement, Mr. Arthur?

"MR. ARTHUR: I'm advising the defendant to admit the priors.

"The defendant has stated that he will do in effect as counsel says and he does admit the priors.

"THE COURT: I think we will need a statement from the defendant."

The defendant, after several unreported discussions with his counsel, ultimately admitted the priors as alleged.

The rest of the day proceeded without incident, the court and counsel being engaged in the *voir dire* selection of the jury. The next morning, after some proceedings in chambers, the court resumed the *voir dire* examination and the following occurred:

"THE COURT: Thank you.

"I believe now it is for the defendant to voir dire.

"You may go ahead.

"THE DEFENDANT: Your Honor, I would like to address the Court.

"(Counsel Arthur talking with the defendant.)

"THE DEFENDANT: I would like to address the Court now.

"It is my right to address the Court, and I want to advise the Court.

"MR. ARTHUR: Your Honor, may counsel with the defendant approach the bench?

"THE DEFENDANT: I want to address the Court in front of everybody here in this courtroom and don't you deny me that right this morning.

"THE COURT: I don't want you to talk. I mean every word.

"THE DEFENDANT: I do not want this attorney (holding up yellow sheets.)

"THE COURT: Take that away, Sheriff.

"THE DEFENDANT: This attorney has defrauded me and I don't want him.

"You can't make me have no attorney I don't want.

"THE COURT: Now, wait. Take him in custody. Take him in custody and put him in the back here.

"I have had enough of that now. This isn't the first time.

"THE DEFENDANT: No, you can't deny people their Constitutional rights down here and you know you denied them to me yesterday and these people know it.

"THE COURT: Have him gagged and bring him back, have him gagged and bring him back for trial before the jury.

"Ladies and gentlemen, I'm sorry about that situation. It has happened yesterday and I called yesterday for an entire new panel.

"I'm going to proceed in the trial of this case. I can't do it this way. He is represented by able counsel.

"I'm going to have to take a recess until I can bring this defendant back here and we will proceed with the picking of this jury.

"I'm going to ask all of you to disassociate from your mind, you must do this, I have no other way of proceeding, nor have you as jurors, I'm going to ask you to disassociate from your mind anything that transpires between the Court and the defendant or any demonstrations that may occur from him, dissassociate it, please, entirely from your mind and try this case only on the facts as presented to you.

"I'm not asking for this and neither are you and I'm trying, but I can't try this defendant, and I'm going to go to trial, please disassociate any situation that exists, any personalities, anything that he may bring forth here.

"He is represented by capable counsel and we will proceed.

"Now I will take a short recess until he is back here.

"Please do not discuss the case or come to any opinion or conclusion.

"Hold yourself in abeyance, please.

"Take a short recess."

That afternoon, in chambers, there was a conversation among the court, the deputy district attorney and defense counsel (defendant's presence not being shown) :

"THE COURT: Come in, gentlemen.

"Yes, sir. Go ahead.

"MR. FEIFER: I'm wondering, Your Honor, whether the defendant is not in a position where he cannot communicate with his counsel, whether perhaps some provision should be made for communication.

"THE COURT: Well, any time in the recess the counsel can talk to him all he wants to, the defendant's in custody. He can talk to counsel in custody.

"But I can't conduct this trial with the defendant under the protestations and conduct he has assumed.

"Now, I told the defendant—of course, it goes without saying that Mr. Arthur can't help this, I'm talking about the defendant, it goes without saying, I can't try this case on the

basis that it is set up to be tried the way the defendant wants it tried with this constant protestation, these injections of statements by the defendant, the exhibiting of placards and what have-you. It can't be done.

"The trial in an orderly fashion cannot be had in that—and I have no way—I have no road to turn to, I have no way to go. I have no path to follow other than what I am doing and try this case in an orderly fashion.

"I will meet any requirements the defendant may want to discuss the case with counsel at any time or at a recess Mr. Arthur can talk to his client all he wants to and as much as he wants to.

"Now that's about as close as I can come to it.

"Mr. Feifer: I'm wondering if counsel has had any opportunity to get any expression of any change of his behavior from the defendant so that perhaps we could proceed in an orderly fashion.

"The Court: Well, if the defendant will conduct himself in an orderly fashion, conduct his case through his counsel, as I have said many times, he is a competent counsel to handle his case, it is very obvious I would have no objection to this restraint (indicating) on his mouth being taken off.

"But I can't run the case on the basis that the defendant himself wants to set up for his standards. Now there we are.

"If—whenever you feel that you want to—a reasonable recess to talk to your client, why, you can have it, you can talk to him, Mr. Arthur.

"Mr. Arthur: Sir, if I may say this pertinent to the Court's remarks; that I will talk to the defendant again during the afternoon recess, and I will make it very clear to him that, as this Court has already done, that the Court will not take outbursts to disrupt the orderly procedure of this trial; that if the defendant does assure me as counsel that he will do nothing further in the sense of trying to conduct the case himself, I will report same to the Court and I will make a request, if that is the case after the—or during the recess, rather, that the restraint over the defendant's mouth be removed.

"The Court: And if I feel that what you tell me, that he means it and he's sincere in it, I undoubtedly will grant your request and see how we get along.

"Mr. Feifer: Perhaps might I suggest that we take a moment and perhaps it is possible to proceed in the entire trial without the restraint—

"The Court: Well, you see, —

"Mr. Feifer: —because we are about to embark on some testimony.

"The Court: Well, you see, it works both ways, to take this restraint off of his mouth and have these outbursts, unless I'm fully satisfied that there won't be the outbursts, that thing can work for or against the People, for or against the defendant;—

"Mr. Feifer: I understand.

"The Court: —in other words, the whole trial is in a state of uncertainty, in a chaotic condition.

"I can't try any lawsuit properly unless it can be done in a peaceful quorum [sic] without outbursts.

"It can't be done on the basis of a strike being held in the Sheridan Hotel in San Francisco.

"I mean you can't administer a lawful procedure in that kind of a fashion. It must be done where this case can be put on properly.

"That is all I'm trying to do.

"Mr. Feifer: Yes, I understand that. I was wondering if Mr. Arthur will ascertain from the defendant whether we can proceed in an orderly fashion without the—

"The Court: Well, if you want to talk to him—

"Mr. Arthur: May I say—

"The Court: —that if he goes up in smoke, so to speak, I will simply have to take him back and put these restraints on him.

"Now that would hurt him as much as—I don't know what the effect would be, but I have no other alternative."

The trial proceeded, defendant being under restraint, until after a recess. At that point, counsel sought and was granted a conference at the bench, with the following result:

"The Court: You had better do that right now.

"Mr. Arthur: Thank you, sir.

"(Recess.)

"(The following proceedings were had in open court in the presence and hearing of the jury:)

"The Court: Let's see, gentlemen.

"May we stipulate defendant and counsel and all jurors are here?

"Mr. Arthur: So stipulated, Your Honor.

"Mr. Feifer: So stipulated.

"Mr. Arthur: Your Honor, before I begin my cross examination, sir, may counsel approach the bench?

"THE COURT: Yes. Come right up here with the reporter.

" (A conference was had at the bench between the Court and counsel out of the hearing of the jury as follows:)

"MR. ARTHUR: I wish the record to reflect that as pursuant to my statement to this Court that I would talk to the defendant either before or after the recess, that I have talked to my client, that it is my feeling that perhaps at this time it would be—there is a possibility of another outburst and that I will accordingly submit the matter to the Court.

"I would state that the conversation was witnessed by a bailiff of this court.

"THE COURT: Well, I will accept your statement and at least at this time I will proceed as we are now.

"Now if it later appears that there are reasonable grounds to believe that I can proceed without the restraint on his—on the defendant or on his mouth, I will release it.

"But inasmuch as I say, I'm fearful of an outburst, and I think that this Court is entitled to proceed in a proper quorum [sic] and without any outbursts and proceed in a quiet manner in the trial of the case.

"Thank you.

"And we will proceed in this fashion for a while.

"MR. ARTHUR: Yes, Your Honor.

"THE COURT: Thank you."

The trial proceeded until, on the third day, the court allowed the gag to be removed. After the jury had returned its verdicts on the pleas of not guilty, the court, for the first time, permitted defendant to go into chambers and state in full his objections to the way his counsel had tried the case and his dissatisfaction with him. The record of that occurrence is as follows:

"MR. ARTHUR: Your Honor, I hesitate sincerely to interrupt the Court.

"The defendant has requested that he be allowed to address you with counsel at the bench.

"THE COURT: Well, I will take you in chambers for a few minutes.

"I do want him to speak through you as his counsel, please.

"MR. ARTHUR: Yes, sir.

"THE COURT: That is the proper way, he should talk to you.

"I have said you are a very capable attorney, there is no reason why he shouldn't, you well represent him.

"But I will take him in chambers and see what he has to say, if that is what you want.

"Mr. Arthur: I would appreciate that, sir.

"The Court: All right. Bring in the reporter.

" (The following proceedings were had in chambers out of the presence and hearing of the jury:)

"The Court: Now we are in chambers with both counsel, defendant, the sheriff and the clerk and the Court.

"Now, what do you want to say, Mr. Johnson?

"The Defendant: Your Honor, let the record show that I want to charge my attorney—

"The Court: Talk slowly.

"The Defendant: Let the record show I want to charge my attorney with misrepresentation with fraudulent intent.

"I want to charge the district attorney's office with perpetrating a fraud against me and of acts of fraud in the administration of allegations against the defendant, Joe Willie Johnson.

"You know that this whole trial has been a trial by trick and device, suppression of evidence.

"My attorney in this case has taken this jury and picked the jury when my mouth was muffled up and I told him I didn't want no all lilly white jury representing me or listening to what I had to say; I had nothing to say at all in the whole case.

"This jury was picked by my attorney here and the district attorney's office who has obviously perpetrated an act of fraud against me on the grounds that they concealed two psychiatrists' reports out of the records and are attempting to try me in double jeopardy.

"I have been tried on my insanity thing once before in Judge Coleman's court.

"Judge Coleman found me insane at that time and there were only two psychiatrists read in my presence at that time [sic] and I was sent to Atascadero Hospital upon the wrong commitment number in order to be called back here and tried in violation of the Fourteenth Amendment, which I have been already, and the defendant this morning moves for an acquittal on the grounds that you (indicating) have denied him due process of law in violation of the Fourteenth Amendment by muzzling his mouth down in front of the jury that he didn't have anything to do with picking.

"And you should have—

"The Court: Well, I will not put you out there to defend

yourself. You are not a lawyer. You are not a lawyer. You are not prepared to defend yourself.

"If you want my opinion, he has done a very good job in defending you.

"He kept you off the stand, which I would have done, if I had represented you as a lawyer or told you not to take the stand if you were representing yourself, because the first thing the People ask you is if you committed these crimes, and if you commit perjury, you have got felony charges against you.

"You would have to answer all of these questions in front of a jury.

"I will not go into those things, I will not discharge him. He is a capable lawyer and you are in no position to defend yourself because you don't understand enough about the law.

"I will not go into a long detail of if and why.

"I deny the motion.

"Now, the question of whether you are not guilty by reason of insanity is going to be at issue in just a minute. That is, we are preparing to try that question.

"And that's for the jury, that is the next step here, that is the way the code—the law sets it out.

"THE DEFENDANT: Yes, sir.

"All right. My attorney (indicating), the only time I was being tried in this courtroom, vacated the records, police reports, and why they was vacated is merely because these police officers have committed subornation of perjury in their testimony.

"That is why they have produced these witnesses, to commit perjury, and lied, giving perjured testimony.

"I was arrested for committing these things.

"Let the record show that I have three witnesses that heard a conversation by Mrs. Hage and her father here for in Division 43.

"I told Earl C. Broady—Earl C. Broady knows, I wrote him a letter about it, and when he—when Mrs.—when Mrs. Neeley got on the stand and said that the defendant at that time was dressed in a brown hat, white shirt and yellow sweater and was five foot three tall, she jumped around and changed her testimony on the stand and said the defendant was dressed in a blue suit, which made her committing obvious perjury.

"THE COURT: Well, the jury has got up to this point, they have made their decisions up to this point, and I will go ahead and try the balance of the case.

"Let's go outside here."

Defendant agrees that it is proper for a trial judge to restrain and gag, or to threaten to do so, a defendant in a case where it is necessary to preserve order and to prevent the defendant from obstructing justice. (See *People* v. *Stabler* (1962) 202 Cal.App.2d 862 [21 Cal.Rptr. 120], and *People* v. *Harris* (1920) 45 Cal.App. 547 [188 P. 65].) However, the cases in which such action was held proper involved extreme situations in which the defendant was very obstreperous or used obscene or abusive language, or threatened or attempted violence. (See *People* v. *Kimball* (1936) 5 Cal.2d 608 [55 P.2d 483], where the defendant concealed weapons and threatened to kill and strike witnesses; *People* v. *Merkouris* (1956) 46 Cal.2d 540 [297 P.2d 999], where the defendant kept interrupting, said the trial was being conducted in a prejudicial manner, and called the judge a "stupid old fool"; and *People* v. *Loomis* (1938) 27 Cal.App.2d 236 [80 P.2d 1012], where defendant used obscene expressions, kicked the table, and threw himself on the floor.) The nearest case, on its facts, which we have found is *State* v. *Van Bogart* (1958) 85 Ariz. 63 [331 P.2d 597]. But in that case there were repeated interruptions by defendant of a nature far more serious and continued than here.

■ It is well settled law that if a defendant, during the course of the trial, becomes dissatisfied with the manner in which his counsel has handled his case and wishes to discharge counsel for that reason he has a constitutional right so to do (*People* v. *Wilson* (1941) 46 Cal.App.2d 218 [115 P.2d 598]), subject to the supervisory powers of the trial court to see that such discharge does not result in an uninformed and unintelligent waiver of the right to counsel.[3] (*In re James* (1952) 38 Cal.2d 302 [240 P.2d 596]; *People* v. *Chesser* (1947) 29 Cal.2d 815 [178 P.2d 761, 170 A.L.R. 246]; *People* v. *Jackson* (1960) 186 Cal.App.2d 307 [8 Cal.Rptr. 849].) ■ It is equally well settled that no issue on such a matter can be considered on appeal unless defendant has promptly made his position

---

[3]It is in the sound discretion of the trial court to determine whether or not such a discharge requires a continuance for the employment of new counsel; and the possibility of such delay is, of course, inherently involved in the question of whether there is an intelligent and informed waiver.

known to the trial court.[4] As far as this record discloses, defendant was merely attempting to exercise his constitutional privilege and to comply with the proper procedure. The trial court not only refused to permit him to state his position, but did so in the face of the suggestion by the deputy district attorney that such a procedure be followed. At the time of this suggestion, no jury was present; the matter could have been heard and disposed of in a short time. Had the court allowed defendant to make his statement, and had then ruled thereon, we would have no question of its discretionary power, if defendant had thereafter attempted further interruptions, to take any necessary action for his restraint. But defendant was entitled to one fair chance to make a record of his discontent with his counsel and to have a record ruling thereon. The highhanded conduct of the trial court here was even more objectionable than that condemned in *Cooper* v. *Superior Court* (1961) 55 Cal.2d 291 [10 Cal.Rptr. 842, 359 P.2d 274], since an ignorant defendant is even less capable of protecting his rights than was the experienced trial counsel therein involved.

It is immaterial that when, after the trial on the guilty plea was finished and the effects of the gagging had operated, defendant was at last allowed to make his statement, it turned out to be insufficient to require action by the trial court. The court did not, and could not, have known what defendant would urge. It is the punishment, without necessity, of the initial attempt to exercise his right to object which rendered the trial unfair.

As we have pointed out above, the case took four days to try; the jury deliberated for two. Although defendant (understandably in view of his prior record) did not take the stand, the case against him, resting as it did on identification testi-

---

[4] "As a rule an accused has a right to represent himself or to representation by an attorney of his own choice. [Citations.] However, the right is one that must be exercised *seasonably* and not through mere caprice." *People* v. *Gaither* (1959) 173 Cal.App.2d 662, 670-671 [343 P.2d 799]; and see *People* v. *Carlyon* (1961) 191 Cal.App.2d 617, 623 [12 Cal.Rptr. 813]. (Italics added.)

"The right to exercise the right to assistance or nonassistance of counsel may only be invoked in the course of an orderly procedure." (*People* v. *McFerran* (1962) 211 Cal.App.2d 4, 8 [26 Cal.Rptr. 914].)

"A defendant may complain at any time during the trial that his counsel is not adequately representing him thereby affording the trial court an opportunity to correct the situation, but if a defendant fails to avail himself of this privilege at the trial level, he cannot ordinarily after an adverse judgment, first complain of the matter on appeal." (*People* v. *Monk* (1961) 56 Cal.2d 288, 299 [14 Cal.Rptr. 633, 363 P.2d 865].)

mony somewhat shaken on cross-examination, cannot be said to have been overwhelming. After examination of the whole record, we cannot say that the physical restraint of defendant, with the obvious implication as to his character which that restraint implied, did not affect the verdict. Under those circumstances, we cannot allow the verdict to stand. (Cal.Const., art. VI, § 4½; *Fahy* v. *Connecticut* (1963) 375 U.S. 85, 86 [84 S.Ct. 229, 11 L.Ed.2d 171]; *People* v. *Watson* (1956) 46 Cal.2d 818, 837 [299 P.2d 243].)

## III

Defendant contends, also, that his counsel was incompetent and defrauded him. We have read the record and find the contention to be without merit. Under the circumstances pervading this trial (including a manifest hostility between court and counsel), defense counsel performed as well as could have been expected of him. We repeat the admonition of our Supreme Court in *People* v. *Brooks* (1965) 64 Cal.2d 130, 140 [48 Cal.Rptr. 879, 410 P.2d 383]: "In the heat of a trial, defendant's counsel is best able to determine proper tactics in the light of the jury's apparent reaction to the proceedings. Except in rare cases an appellate court should not attempt to second-guess trial counsel."

The purported appeal from the order denying a new trial is dismissed; the judgment is reversed.

Files, P. J., and Jefferson, J., concurred.