[Crim. No. 3716. First Dist., Div. One. Oct. 20, 1960.]

THE PEOPLE, Respondent, v. WILLIE MITCHELL, Appellant.

Willie Mitchell, in pro. per., for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Kenneth D. Lyders, Deputy Attorneys General, for Respondent.

BRAY, P. J.—Defendant was charged in an information with two felonies: (1) violation of section 286, Penal Code (sodomy); (2) violation of section 211, Penal Code (robbery). He was also charged with three prior felonies. He pleaded guilty to violation of section 286. The charge of robbery and of the commission of the three priors were dismissed. Defendant in propria persona appeals from the judgment of conviction of the felony to which he pleaded guilty.

This case is typical of a growing practice among inmates of our penal institutions, who, after pleading guilty to one charge and having others dismissed, appeal from the judgment based on their pleas, and contend that their counsel did not properly represent them in the trial court.

 "The judgment entered on the plea of guilty is not appealable on the merits. The rule is correctly stated with supporting authority in 24 Corpus Juris Secundum at pages 683 and 684: '. . . where judgment has been entered on a plea of guilty, irregularities not going to the jurisdiction or legality of the proceedings will not be reviewed.' " (*Stephens* v. *Toomey*, 51 Cal.2d 864, 870 [338 P.2d 182] ; see also *People* v. *Rose*, 171 Cal.App.2d 171, 172 [339 P.2d 954].)

 Defendant attempts to bring himself within the exception mentioned in the above rule by contending that he was denied adequate representation by counsel and therefore he may question the legality of the proceedings on this appeal. (See *People* v. *Avilez* (1948), 86 Cal.App.2d 289 [194 P.2d 892].) An examination of the record shows that he was not denied adequate representation by counsel.

At the very beginning, on arraignment, defendant stated: ". . . I think that I am able enough to represent my case if I am given an opportunity." Notwithstanding that statement the court appointed a deputy public defender to represent him. At one of the later hearings when his counsel told the court that he and the deputy district attorney were "endeavoring to work this situation out," defendant volunteered the statement, "Your Honor, I want to make this just to the Court. An act of sodomy was committed by me and a defendant." When asked by the court if he was pleading guilty to an act of sodomy, defendant stated, "I will plead guilty

to an act of sodomy but not an act of sodomy by force."
When informed that no force was charged, and asked what
his plea was, he stated, "Let me get an understanding, your
Honor, if that is just a straight act of sodomy with the indi-
vidual?" He was then told that that was the way the section
read and not to plead guilty if he did not want to, and a trial
would be had. He then replied, "Well, I am guilty to the act
of sodomy." As he apparently still did not understand that
no force was charged, the court continued the case for three
days. On the next hearing his counsel stated to the court that
he had informed defendant that the district attorney was
willing to dismiss the other charges on a plea of guilty to
sodomy, but that counsel could not foretell what the court
might do, and that if defendant pleaded guilty "he pleads of
his own volition with no promises whatsoever." Defendant
then indicated that he desired a trial, and the case was con-
tinued for trial.

On the date set it appeared that Judge Arata, before whom
the proceedings had theretofore been had, would not be avail-
able on the date the parties desired to start the trial. Defend-
ant then stated, ". . . I want my case in front of Judge
Arata." The judge then asked defendant if he had changed his
mind, apparently about pleading guilty. Defendant then
stated that his counsel had only talked to him twice and then
not about the case but about the time defendant would get in
the penitentiary. He would like counsel to withdraw, as he
had failed to "show me grounds that I had to beat my case,"
and the court to appoint another attorney to represent him.
In the discussion that followed counsel stated that a couple
of days before that he had seen defendant "In the afternoon
of that day and in the morning of that day I spent at least
40 minutes with" the defendant. The court then said it would
not appoint another attorney, and that defendant would
either have to represent himself or accept counsel. Defendant
replied, "That is perfectly fine. That will be perfectly fine."
The case was then put over to a fixed date for trial, when
Judge Arata would be present. On that day defendant stated
that he did not have proper counsel and would like the court
to assign another attorney to represent him. The court then
called defendant's attention to the fact that it had set the trial
for this date at defendant's request and that the trial would
go on. Defendant stated he did not have his witnesses. The
court told him to give counsel the names of his witnesses and
that counsel would get them, that the jury would be chosen

and then the case continued until the next day. Defendant then said he did not want counsel but wanted a new attorney. The court stated that it would not appoint another attorney. The district attorney then suggested a continuance until Monday. Counsel said he wanted to make a statement. The court then adjourned to a room outside of the one in which the jury panel then was. Counsel stated that he had told defendant that if he would give him the names of his witnesses he would have them subpoenaed, and that defendant gave him the name of only one. He told defendant he would get the witness although he could not see of what value he would be. Counsel stated that he had seen defendant a number of times. "I know exactly what he has in mind. He told me not once, but repeated over and over again the same things, and if I talked to him twenty times more, it wouldn't make any difference in what he told me." Counsel then said that he was prepared for trial. Defendant then said with reference to a time when counsel brought the deputy district attorney to see defendant, at the latter's request, "these two gentlemens come over to talk with me and I didn't deny the act of sodomy, but I didn't do it with force. I didn't rob the man." He then said that he explained to the prosecuting attorney that he did not use force as the victim claimed that he did, "And I was willing to plead guilty to the charge, but I did not force the man into committing no act of sodomy, and I did not rob him. . . ."

The court then stated that defendant was not charged with using force, and that if the act were voluntary by both parties, it still would be sodomy; that as the court understood defendant, "you admit the charge of sodomy, but you deny it was done in the way that it was said it was done at the preliminary examination?" Defendant answered "Yes." The court then said that the case would have to go to trial, either with the appointed counsel representing defendant or with defendant representing himself, or defendant could change his plea. Counsel then said he thought the court should point out to defendant "that he is entitled to represent himself if he so desires, and I will confer with him when he indicates he wants to discuss some point. . . . He understands his case thoroughly. I do not see why he can't represent himself." The court told defendant that he had a decision to make. Defendant then said: "Let the record show this: I am willing to enter my plea to sodomy because I did that, but I didn't do it with force. . . . In other words, Judge Arata, I can enter my plea of what I done, is that right?" The court said "Yes."

Thereupon the clerk read the sodomy count in the information. Defendant said, "In other words, I think you are willing to accept this straight act of sodomy? . . . Well, I am guilty of that." Defendant then withdrew his former plea of not guilty. Counsel then interrupted to state that he was not urging defendant to plead guilty in any manner, shape or form; that he was prepared to go to trial, and that if defendant pleaded guilty he would be doing it "of his own volition and because he wants to." Defendant then stated, ". . . I am entering the plea on my own." He then pleaded "guilty of sodomy but not by force. Not by force." His counsel requested that the case be referred to the probation officer for a report. Defendant stated that he would like to go to the hospital. The court said he could not send defendant to the hospital "unless I found you ——" Defendant interrupted, "I am not insane. . . ." The court informed defendant that with his priors the court after the report of the probation department was received would probably send defendant to the state prison, but if defendant waived reference to that department, defendant could go immediately to Vacaville where there were medical facilities. Defendant then waived reference to the probation department, saying that he would take his sentence "now."

It clearly appears from the record that the defendant desired to plead guilty to sodomy in view of an understanding between the deputy public defender representing him and the district attorney's office that in the event of such plea the charge of robbery and prior convictions would be dismissed. Defendant was anxious that it be understood that while he was guilty of sodomy, the crime was committed without force, but with the consent of the victim. After having volunteered to the court the information that he was guilty of sodomy, he later desired new counsel because his counsel was unable to "show me grounds that I had to beat my case."

This is a different situation from that in *People* v. *Avilez, supra,* 86 Cal.App.2d 289, where, notwithstanding that the defendant had an attorney who could not be present in court until later in the morning of the day set for plea, and so notified the judge, the court appointed the public defender to represent the defendant, who, without consulting the defendant as to the facts of his case and any possible defense, permitted the defendant to plead guilty to 32 felony charges. Here the record shows that the deputy public defender consulted with defendant, knew his case, was prepared to go to

trial, but in view of all the circumstances, particularly defendant's voluntary statement of guilt in open court, evidently felt that the best interests of defendant would be served by a guilty plea to one charge and a dismissal of the other and the priors. Even then, he made sure that the choice was that of defendant, who said, ". . . I am entering the plea on my own."

A defendant during the proceedings "before the magistrate and the trial court has as a matter of absolute right but two choices in the matter of a court-appointed attorney; he can accept representation by counsel . . . or he can elect to represent himself." (*People* v. *Mattson* (1959), 51 Cal.2d 777, 794 [336 P.2d 937]; *People* v. *Clark* (1959), 176 Cal. App.2d 316, 318 [1 Cal.Rptr. 176].)

A defendant's right to a court-appointed counsel does not include the right to require the court to appoint more than one counsel, except in a situation where the record clearly shows that the first appointed counsel is not adequately representing the accused. No such showing was made here. The record shows just the contrary.

"The right of a defendant in a criminal case to have the assistance of counsel for his defense, guaranteed by the Federal and state Constitutions with some variations in scope, and in many instances confirmed by statute, may include the right to have counsel appointed by the court for that purpose discharged or other counsel substituted, if it is shown or appears during the course of the prosecution that failure to do so would substantially impair or deny the right so guaranteed, but the right to such discharge or substitution is not absolute, in the sense that the court is bound to accede to its assertion without a sufficient showing or good reason to believe that the right to the assistance of counsel would be substantially impaired or in effect denied in case the request is not granted, and within these limits there is a field of discretion for the court. The right to such discharge or substitution is to this extent relative, and the authorities seem united in the view that if there is fair representation by competent assigned counsel, proceeding according to his best judgment and the usually accepted canons of criminal trial practice, no right of the defendant is violated by refusal to accede to his personal desire in the matter." (157 A.L.R. 1225, at 1226.)

Judgment affirmed.

Tobriner, J., and Duniway, J., concurred.