50 Cal.Rptr. 26]

[Crim. No. 9764.   Second Dist., Div. Three.   Feb. 7, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. JOHNNY STEWART, Defendant and Appellant.

Michael D. Hiller, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General and Leslie F. Bell, Deputy Attorney General, for Plaintiff and Respondent.

DRUCKER, J. pro tem.*—A jury trial resulted in a conviction of defendant and codefendant of robbery, second degree. Probation was denied and the defendant was sentenced to state prison.

Defendant bases his appeal on the following grounds: The evidence is insufficient to support the judgment of conviction; he was denied his constitutional right to act as his own attorney, and was refused counsel of his own choosing; impeachment by prior conviction of felony constitutes denial of due process and equal protection thus preventing him from obtaining a fair trial; introduction into evidence of tape-recorded statements of the codefendant were violative of due process and fair trial; interpreter propounded leading questions to the prosecution witness, and improper argument by prosecuting attorney.

On September 9, 1963, about 12:45 p.m. Mr. Nishimura was passing through an alley near East 5th Street and Stanford Street. He observed defendant Stewart in the alley stomping down trash in an ash can. The codefendant Oliver was in the alley about a half block away. He passed defendant and proceeded a short distance when defendant came up behind him and grabbed him around his neck. Codefendant removed his wallet and money from his pants pocket, and ran. Defendant then let go and he ran. The victim reported the robbery to the police. The next day, at a police lineup, the victim identified defendant and codefendant as the men who robbed him. He also testified that the defendant, at that time, was dressed in the same clothes he wore when he first saw him in the alley.

On September 9, 1963, about 12:30 p.m., Mr. Campbell was standing near his car in a parking lot on East 6th Street, about a block from where the robbery took place. He was approached by the defendant and codefendant whom he had never met before. The codefendant asked him to drive both of them to 67th and Central. A charge of $2 was paid by codefendant. Both men got into the car and directed Campbell to drive down 5th Street. He parked on 5th and Stanford at their direction. Stewart left the car, and about five minutes later, the codefendant left the car. He waited for them about 15 or 20 minutes and when they did not return he went looking for them. He discovered defendant in a cafe. He

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

asked him where Oliver was, stated that he did not have time to wait and asked him to get Oliver so they could proceed on their way. Defendant said he would be there in a minute and Campbell returned to the location of his vehicle. In a police car double parked next to his car, he saw the codefendant in custody of the police. Campbell accompanied the police to Central Station and left the key in his car. When he returned 25 minutes later, the car was gone.

About 9:45 p.m. the day of the robbery, defendant was seen driving Campbell's car west bound on Adams. He was stopped and arrested at 24th and Broadway. He told the officer that his wife died and he was on the way to the hospital. While in custody, the defendant was questioned. He stated that he saw the person who owned the car being arrested; that the person pointed to the car and he thought that meant for him to take the car away; that he was going to take the car back to Adams and Central where that person had previously picked him up and driven him to 5th and Stanford. When asked if he knew codefendant Oliver, the defendant replied that the only time he saw him was that morning when they rode downtown together from Adams and Central.

At the trial the defendant presented two alibi witnesses, one of whom testified he was with the defendant from 9 a.m. to about 3 p.m. on September 9th and that they went to a ball game about 1:30 p.m. of that day. The other alibi witness could not account for the defendant after 12:20 p.m. of that day. The defendant testified he bought the car from some fellow for $100, $50 down and upon the payment of the balance he would get the pink slip; that the seller gave him a piece of paper which defendant designated as an ''I.O.U.'' for $50; that when he was arrested, the officer tore up the ''I.O.U.'' The defendant denied having made any of the statements allegedly made to the officers, and to which they testified.

■ Defendant challenges the sufficiency of the evidence by citing certain isolated portions of the testimony, none of any substance, and most of which relate to the credibility of witnesses or the weight of the evidence. Considering, as we must, the evidence in the light most favorable to the prosecution (*People* v. *Kristy,* 111 Cal.App.2d 695, 698 [245 P.2d 547]), it appears from the record that the evidence is abundantly sufficient to support the judgment of conviction.

The claim by the defendant that he was denied his right to counsel of his own choosing, and the right to represent himself, is not supportable. The defendant was represented by the public defender, the codefendant was represented by a court-appointed attorney due to a conflict of interest. After the jury was selected and sworn to try the cause, the court was advised at the bench by counsel for the defendant that the defendant wanted another lawyer. After examining the defendant in chambers in the presence of counsel, the trial judge stated: "THE COURT: Well, Mr. Stewart, it appears to the Court that you are being more than adequately represented. The investigator was sent out, interviewed the witnesses, Mr. Rasmussen has the report. The witnesses are subpoenaed. They are in court. They will testify in your behalf." After further discussion the defendant stated that he might as well represent himself. Upon further questioning the trial court determined that the defendant was incapable of representing himself. The defendant then stated that he was not going to trial with the public defender. The court informed the defendant that he was going to trial with his counsel; that the jury had been impanelled; and the trial was ready to start. The defendant then asked for additional time because he thought he could get his mother to get him a lawyer. The court denied his request and thereupon the defendant stated that he would not go to trial; that he was not ready. The court then informed the defendant, "We will proceed. Mr. Rasmussen will represent you." The defendant left the chambers after further discussion with the court. A short time later the public defender reported to the court that the defendant wanted him to continue with the case as his counsel. The court again questioned the defendant and ascertained that it was his desire to be represented by the public defender.

The trial judge found that the defendant was not capable of representing himself. The record supports this finding. Therefore, in the absence of an intelligent and competent waiver of counsel, the court was justified in denying the defendant's demand to discharge his attorney.

In *People* v. *McFerran*, 211 Cal.App.2d 4, at page 7 [26 Cal.Rptr. 914], the court stated: "In deciding whether or not to permit the defendant to conduct his own defense, the trial court was duty-bound to determine whether he was making a competent, intelligent and complete waiver of his

constitutionally guaranteed right to be represented by counsel. This obligation has been described as a 'serious and weighty responsibility' and its discharge requires a consideration of the nature of the charge, the facts and circumstances of the case and the education, experience, mental competence and conduct of the accused, and the determination made involves an exercise of discretion which, in the absence of a showing of abuse, will not be disturbed on appeal. (*People* v. *Shroyer*, 203 Cal.App.2d 478, 482 [21 Cal. Rptr. 460].)'' ▮ The request of the defendant to continue the trial after the jury was sworn, because, possibly, his mother might be able to procure other counsel for him, was unrealistic and unreasonable.

The ruling of the court refusing to accede to the belated request was correct. ▮ The right to the assistance of counsel guaranteed by the constitutional and statutory provisions, like any other legal right, may be invoked only in the course of orderly procedure. (*In re Connor*, 16 Cal.2d 701, 709 [108 P.2d 10].) As stated in *People* v. *Thomas*, 58 Cal.2d 121, at page 131 [23 Cal.Rptr. 161, 373 P.2d 97] : ''It is manifest that no abuse of discretion can be charged to the court in bringing the matter to trial when it did. 'To hold that a defendant charged with crime has an absolute right to counsel of his own selection, with unlimited right to insist upon continuances of his trial, would be subversive of the prompt administration and execution of the laws—upon which depends largely their effectiveness. It is at once apparent that the trial court must in the nature of things have some control over such matters, to the end that judicial business may be dispatched in an orderly manner; and if it has any discretion it is apparent to us that such discretion was not abused in this particular instance.' (*People* v. *Shaw*, 46 Cal.App.2d 768, 774 [117 P.2d 34] [Citations.].)''

▮ Furthermore the defendant changed his mind and requested that the public defender continue with the case and represent him as his counsel. The evidence in this case does not reveal any prejudice to the defendant resulting from his representation by the public defender, rather the evidence indicates that he was represented earnestly and conscientiously.

Defendant asserts that impeachment of defendant by his prior felony conviction was a denial of due process and equal protection of the law, preventing him from obtaining a fair trial, and therefore section 2051, Code of Civil Procedure, is

unconstitutional; that such impeachment "has probably led to many miscarriages of justice through conviction on a latter charge by consideration of the prior conviction."

At common law, persons convicted of crimes which render them infamous, were made incompetent as witnesses. Conviction of a felony came within this category. In most jurisdictions the disqualification of infamy was removed by statute, but proof of a prior conviction was allowed to affect credibility. (Vol. 3, Wharton's Criminal Evidence (12th ed.) p. 78, § 752.)

Admission of evidence of a prior conviction for the purpose of impeachment pursuant to section 2051, Code of Civil Procedure, has been upheld in innumerable decisions in California for almost the past century.

The defendant may find support for his contention in the expressed thought of many legal scholars concerning the prejudicial effect of the admission in evidence of prior convictions which do not tend to prove the witness' dishonesty or lack of veracity. (See Witkin, Cal. Evidence (1958) § 655.) However, the latest effort of the California Law Revision Commission recommending a modification of the law in this regard into the new Evidence Code,[1] did not gain acceptance with the Legislature.[2] Section 788 of the new Evidence Code, effective January 1, 1967, is, in substance, a recodification of the existing law.

Defendant contends that the introduction into evidence of the tape-recorded statement of codefendant Oliver was violative of due process under the *Escobedo-Dorado* rule. Prior to the playing of the tape recording in open court, the court admonished the jury that such evidence was received only as to defendant Oliver. Upon cross-examination of the

---

[1] (See Cal. Law Revision Commission, Recommendation proposing an Evidence Code, § 788, based on Code Civ. Proc., § 2051.) *Recommendation* —"788. (a) Subject to subdivision (b), evidence of a witness' conviction of a felony is admissible for the purpose of attacking his credibility if the court, in proceedings held out of the presence and hearing of the jury, finds that: (1) An essential element of the crime is dishonesty or false statement; and . . . .

"Comment. . . . subdivision (a) limits the convictions that may be shown for impeachment purposes to those felonies that necessarily indicate the witness' dishonesty or lack of veracity. Other convictions cannot be shown because they have little or no tendency to prove the witness is not trustworthy and because they frequently have an unduly prejudicial effect."

[2] (See Evid. Code, with Official Comments, § 788, Cal. Law Revision Commission, effective January 1, 1967.)

police officer after the tape was played, the following question was asked and answer given: "Q. Actually in this tape recording Oliver never at any time used the word 'Johnny' or 'Johnny Stewart' or 'Stewart.' did he? The only ones that used those names are you and the other officer? A. I think you are correct, sir." The tape recording of the statement of the codefendant was not incorporated into the reporter's transcript on appeal. The defendant makes no reference to any portion of said statement and fails to point out in what particular regard the statement of the codefendant affected or incriminated him. The bare statement of the defendant in his brief that "In effect, appellant was indirectly denied the right to counsel under the 6th Amendment by having Oliver's statement read to the jury, in a case where they were jointly tried" finds no support in the record before us.

Defendant next complains that the interpreter propounded leading questions to the prosecution witness. The defendant does not, and probably could not state, what the interpreter is supposed to have said that he deems to be leading questions. On one occasion the court admonished the interpreter not to try and get an answer from the defendant by asking him a further question. On another occasion the court instructed the interpreter to give the exact translation, that he should have stated "this county" instead of "Los Angeles." This point is without merit.

Defendant also contends that improper argument by the prosecuting attorney deprived appellant of a fair trial. In his argument the prosecutor stated that the failure of the codefendant to take the stand was prompted by fear of the defendant. There is nothing in the cold record to support the propriety of such inference. The prosecutor also stated in his argument: "Now, these defendants didn't get brilliant grades in school, I presume, and nobody is saying that they think logically. Otherwise, they wouldn't have to be strong arming and mugging people in alleys." It was improper for the prosecutor to indulge in an assumption relating to matters upon which there was no evidence. Other contentions made by the defendant in regard to the prosecutor's argument have been considered and found to be without merit. Discussion of them would serve no useful purpose. An examination of the entire record impels the belief that the defendant was fairly tried and that the improper argument of the

prosecuting attorney did not result in a miscarriage of justice.

Judgment affirmed.

Shinn, P. J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 5, 1966.