[Crim. Nos. 8537, 8538.   Second Dist., Div. Two.   Mar. 22, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. RONALD EDWIN SYLVESTER, Defendant and Appellant.

(Two Cases.)

Eugene V. McPherson for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David Gould, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, P. J.—Appellant was charged by information with selling heroin in violation of Health and Safety Code, section 11501. After a jury trial, appellant was found guilty and sentenced to the state prison. The appeal is from that judgment.

At the time of his conviction, appellant was serving probation on a prior conviction. Probation was revoked after the above judgment and appellant was sentenced to one year in county jail on the offense in respect of which he had been granted probation. Both sentences were to run concurrently. The appeal from the order revoking probation has been abandoned.

On September 20, 1961, one Roy Singh was hitchhiking along Reseda Boulevard in Reseda, California. Appellant stopped and picked him up. There was conversation concerning narcotics and appellant offered to sell Singh heroin.

On the morning of September 21, 1961, Singh volunteered his services to the Los Angeles Police Department. At approxi-

mately 10 a.m., Singh called appellant from the central jail and in the presence of several police officers, told appellant that he (Singh) had a friend who wished to purchase a "half a piece" of heroin. Appellant stated that "he was ready, that everything was okay" and a meeting place was arranged.

Singh and an Officer Fesler, posing as the "friend" went to the agreed location. Appellant was in his automobile in a corner gas station. Singh alone approached appellant on foot, asking "if everything was all right, whether he had the stuff." Appellant replied that everything was all right, but that he did not have the narcotics with him and that they would have to leave for a few minutes to obtain them.

After relaying this information to Officer Fesler, appellant and Singh drove off in appellant's car. Appellant made two stops. On the first, he walked to the back of his car and remained for a few seconds. On the second he went into the restroom of a gas station. Returning from the restroom, appellant indicated to Singh he had the heroin. Both returned to the original meeting place where Officer Fesler was waiting.

Appellant parked his automobile near Officer Fesler's automobile, but out of sight in an alley. Singh alighted from appellant's car with a package given him by appellant and approached Officer Fesler. Singh gave the officer the package. It contained heroin. The officer, in return, handed Singh some money in 10 and 20 dollar bills, the serial numbers of which had previously been recorded. Singh gave the money to appellant.

While the transaction described above was taking place, Officer Garrahan of the Los Angeles police placed appellant's residence under surveillance.

At approximately 2 p.m. appellant drove into his driveway and entered the house after slowly circling the block. One hour later, when he emerged, he was arrested and the house was searched. Officer Garrahan found the money used by Officer Fesler to purchase the heroin in appellant's bedroom.

Appellant denied the sale. He testified that: he picked up Singh who was hitchhiking on September 20; he felt sorry for Singh and told him he might be able to help him get employment; there was no conversation about narcotics; on September 21 Singh called him and requested transportation to a possible job; appellant agreed, telling Singh to meet him at a certain location; they met at this location and appellant drove Singh to two gas stations; Singh entered the restroom of these stations and returned to the car; then Singh directed appel-

lant to drive back to their original meeting place, and into an alley; at this point, Singh alighted from the car, disappeared for a few moments, then returned with some money in his hand, saying, " 'I'm having trouble with my friend here. Would you just hold this for me till tomorrow? I'm afraid this guy is going to cause a fight or something.' " Singh then left the scene, telling appellant that he would call him; appellant then returned home and placed the money where it was found by the police. Appellant denied any transaction or discussion concerning narcotics.

At the conclusion of appellant's case, the prosecution moved to reopen its case in chief. This motion was granted. Officer Garrahan was placed on the stand and testified to events occurring subsequent to appellant's arrest. He stated in part: "After I compared the numbers with the bills I found, I told the defendant he undoubtedly must know by now we had the stuff he delivered to the intersection [where the sale occurred] ; and I asked him where the rest of the stuff was. And he said that's all there was." Officer Garrahan, having been qualified as an expert witness, explained that "stuff" was a term used in the narcotics trade to denote heroin.

██ The trial court instructed the jury on the law surrounding the use of confessions and admissions, and as part of the instruction stated: "Evidence has been received in this case tending to show that on an occasion other than this trial the defendant himself made a statement tending to prove his guilt of the alleged crime for which he is on trial."

Appellant claims error, asserting there was no evidence of an admission in the trial. The testimony of Officer Garrahan quoted above, however, was clearly a statement made by appellant out of court tending to prove the ultimate fact of guilt. (*People* v. *Ferdinand,* 194 Cal. 555, 568-569 [229 P. 341]; *People* v. *Ford,* 200 Cal.App.2d 905, 920 [19 Cal.Rptr. 758].)

██ Appellant argues, however, that if the statement be an admission, it was erroneously admitted under *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. We agree. The statement was made during the accusatory stage of the proceedings. Appellant was in custody, and was being subjected to a process of interrogation. There is no evidence that he was advised of his right to counsel or to remain silent, or that he waived either.

The admission is nonprejudicial. It was introduced as an afterthought. The substantial direct evidence of the events

surrounding the sale, are convincing. It cannot be said that, in the absence of the error complained of, a different verdict would have been probable. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

The court also instructed the jury on the question of involuntary confessions. It stated: "The fact that a defendant was under arrest at the time he made a statement or that he was not at the time represented by counsel or that he was not told that any statement he might make could or would be used against him . . . will not render such statement involuntary."

Appellant contends that this instruction conflicts with the rule of *Dorado* in that it makes admissible all incriminating statements made in the accusatory stage without advice or waiver of the rights to counsel and silence.

The instruction, however, is limited in scope. It discusses only the *voluntary* nature of the admission or confession under rules which long predate *Dorado.* (See *People* v. *Miller,* 135 Cal. 69 [67 P. 12]; *People* v. *Atchley,* 53 Cal.2d 160, 169 [346 P.2d 764].) *Dorado* is a recent development relying not on the involuntary nature of the statement but on the right not to make it at all.

There is no dispute on the facts before us underlying the application of *Dorado* rights. If there were a dispute the question of whether an instruction such as the one given should be modified to allow the jury to determine facts re disputed *Dorado* rights, after an initial ruling by the trial court, as is done when an admission or confession is claimed to be involuntary, is one we need not and do not decide.

Appellant's argument that the court on its own motion should have instructed the jury on entrapment is without merit. Such an instruction need not be given if there is no evidence to support it. (*People* v. *Gallagher,* 107 Cal. App. 425, 428 [290 P. 504]; *People* v. *Alamillo,* 113 Cal.App. 2d 617, 620-627 [248 P.2d 421]; *People* v. *Perez,* 62 Cal.2d 769, 775 [44 Cal.Rptr. 326, 401 P.2d 934].)

In the case at bench there were two versions of the transaction. Under the prosecution's version, appellant instigated the sale and was in no way subjected to undue or unconscionable pressure (see *People* v. *Richardson,* 152 Cal.App.2d 310, 318 [313 P.2d 651].) Under appellant's version, no sale was made. There was no evidence whatsoever from which the jury could have found that the sale was made but that appellant was entrapped.

The judgment is affirmed. The appeal from the order revoking probation is dismissed.

Herndon, J., concurred.

FLEMING, J.—I concur in the judgment, but do not agree with the majority's conclusion that Sylvester's statements at the time of his arrest were inadmissible evidence because the accusatory stage had already been reached. In my view, the case at the time was still in the investigatory phase, as defined in *People* v. *Cotter,* 63 Cal.2d 386, 393-398 [46 Cal.Rptr. 622, 405 P.2d 862], and *People* v. *Stewart,* 62 Cal.2d 571 [43 Cal. Rptr. 201, 400 P.2d 97], and the police were not foreclosed from free communication with the suspect.

A petition for a rehearing was denied April 5, 1966.