247 Cal.App.2d 76 (1966)
THE PEOPLE, Plaintiff and Respondent,
v.
GEORGE W. BOURLAND, Defendant and Appellant.
Crim. Nos. 5019, 5455.
California Court of Appeals. 
Dec. 8, 1966.
 George W. Bourland, in pro. per., and Gregory J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.
 Thomas C. Lynch, Attorney General, Edward P. O'Brien, Jennifer L. Bain and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent. *80
 SIMS, J.
 Defendant, under the name of Scott Cretteli, was charged in three indictments with four sales of narcotics in violation of section 11501 of the Health and Safety Code. The actions were consolidated for trial. The defendant revealed his true name, entered his plea of not guilty to each of the four offenses charged, and admitted a prior conviction of possession of narcotics which was set forth in each of the indictments. Following a jury trial, verdicts were returned which found defendant guilty of each of the charged offenses.
 The defendant's motion for new trial, addressed to each of the charges, was denied. The defendant interposed a motion for proceedings for an order for commitment for narcotics addiction pursuant to the provisions of section 6451 of the Penal Code (now (Stats. 1965, ch. 1226, 1 and 2) 3051 of the Welf. & Inst. Code). The following day the defendant filed a notice of appeal under the provisions of subdivision 2 of section 1237 of the Penal Code. His subsequent commitment for narcotics addiction breathed life into this premature notice of appeal as an appeal from the order denying his motion for a new trial. (Cal. Rules of Court, rule 31, subd. (a), 1st par.)
 Thereafter, the defendant was returned to court pursuant to the provisions of section 6453 of the Penal Code ( 3053 of the Welf. & Inst. Code) and given concurrent sentences to prison on the charges of which he had been convicted. A second notice of appeal was filed following the pronouncement and entry of judgment. [fn. 1] The prior appeal should therefore be dismissed. (Pen. Code, 1237, subd. 2.)
 Defendant contends that he was denied his right to effective representation by counsel, and that the trial court committed prejudicial error in failing to give his requested instruction on entrapment. An examination of the record in the light of pertinent principles of law fails to sustain these contentions and the judgment should be affirmed. *81
 Defendant received effective aid of counsel in the preparation and trial of his case
 The record reflects that the defendant was represented by an assistant public defender when he was originally arraigned on the three indictments, when he moved for and secured an order reducing his bail, and when the matters were consolidated for trial, that the public defender interposed motions to dismiss on his behalf and was present when he entered his pleas and when the case was set for trial after the motions were denied. When the case actually came on for trial some 15 days later, the defendant first manifested his discontent with his attorney.
 He asked that the public defender's office be relieved because it contended that the defense proposed by him would result in perjury. (Cf. In re Atchley (1957) 48 Cal.2d 408, 415-418 [310 P.2d 15].) He also represented that he had seven witnesses to be called and that he had not been consulted for more than 10 minutes, and he stated that he had not yet read the allegations against him. In response to the court's question as to whether he wished to represent himself, he replied, "I would like time to be prepared to do that." The court assured him that subsequently he would have time to contact and call his witnesses, but indicated that the impanelment of the jury would proceed at that time.
 The court then ascertained that the defendant had graduated from high school, but that he himself did not know how to measure his familiarity with legal procedure and law. The court then indicated it was not satisfied that the defendant was able to defend himself, and requested and secured the assent of the assistant public defender to "sit with [the defendant] and make such objections as you think proper or motions to strike or take any other procedures that seem to you to be desirable all to the end that [defendant's] rights be fully protected."
 The court then asked the defendant, "Would you have any objection, ... to [the attorney] sitting with you and making suggestions to you and perhaps you making suggestions to him or conversing with him during the course of the trial?" The defendant indicated that he objected to that procedure, because of the attorney's contention about his proposed defense, but that it did not matter whether he was alone or assisted. The judge cut short defendant's pronouncement about facts he was going to bring out in court, ordered the attorney to assist as an agent or arm of the court, and proceeded with the *82 impanelment of a jury. The record fails to reflect these proceedings. Subsequent remarks of the court, which were not contradicted by the defendant, indicate that there had been frequent consultations between the defendant and the attorney while the jury was being drawn and accepted.
 After the impanelment of the jury and the noon recess, the court again interrogated the defendant out of the presence of the jury. In response to the court's question as to whether he still desired to represent himself, the defendant stated: "My desire was to have a paid attorney, but being I wasn't able to at this time, I choose to represent myself rather than be represented by defense counsel."
 The court advised him that the public defender was available for his services and that another attorney would not be appointed. The court stated, "I have concluded from my interrogation of you that you are not--I am not down-grading your intelligence at all--I don't think you are competent or qualified to represent yourself, but that is a decision that you must make. I can't deny you that right. Now, Mr. Weeks is appointed, as you know, to act on your behalf by the Court to do the things that you ordinarily do."
 The court then alluded to the cooperation manifested in connection with the impanelment of the jury and concluded: "So, I suppose the arrangement is working out fairly well between you and Mr. Weeks." Defendant replied: "I don't know of any alternative, your Honor."
 [1] The defendant was clearly entitled to counsel. "The right to trial counsel is guaranteed by the Sixth Amendment, which is applicable in criminal trials in the state courts (Gideon v. Wainwright, 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]), and by section 13 of article I of the California Constitution. 'The right to counsel is a fundamental constitutional right, which has been carefully guarded by the courts of this state.' (In re James, 38 Cal.2d 302, 310 [240 P.2d 596].)" (People v. Douglas (1964) 61 Cal.2d 430, 434 [38 Cal.Rptr. 884, 392 P.2d 964]; and see People v. Mattson (1959) 51 Cal.2d 777, 788 [336 P.2d 937]; and People v. Shroyer (1962) 203 Cal.App.2d 478, 482 [21 Cal.Rptr. 460].)
 [2] The refusal to permit a defendant financially able to retain an attorney to be represented by counsel of his own choice will constitute a denial of due process of law where it can be effected under the circumstances of the case without an unreasonable disruption of the orderly processes of justice. (People v. Crovedi (1966) 65 Cal.2d 199, 208 [53 Cal.Rptr. *83 284, 417 P.2d 868].) Decisions in this state "demonstrate a conviction that the state should keep to a necessary minimum its interference with the individual's desire to defend himself in whatever manner he deems best, using any legitimate means within his resources--and that that desire can constitutionally be forced to yield only when it will result in significant prejudice to the defendant himself or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case." (65 Cal.2d at p. 208.)
 [3] Where the defendant is financially unable to retain an attorney "Our constitutional guarantee that an accused 'shall have the right ... to appear and defend, in person and with counsel' (Cal. Const., art. I, 13; Pen. Code, 686), substantially similar to that accorded federal defendants by the Sixth Amendment to the United States Constitution (People v. Mattson (1959) 51 Cal.2d 777, 795 [21] [336 P.2d 937]), is satisfied by the appointment and appearance of the public defender in behalf of the accused (the latter also being present)." (People v. Hughes (1961) 57 Cal.2d 89, 98 [17 Cal.Rptr. 617, 367 P.2d 33].)
 [4] Where the defendant is so represented by counsel, the following rule applies: " 'It is settled that the attorney of record has the exclusive right to appear in court for his client and to control the court proceedings, so that neither the party himself [citations], nor another attorney [citations], can be recognized by the court in the conduct or disposition of the case. [Citations.]' " (People v. Merkouris (1956) 46 Cal.2d 540, 554-555 [297 P.2d 999], quoting and emphasizing language from Wells Fargo & Co. v. City & County of San Francisco (1944) 25 Cal.2d 37, 42-43 [152 P.2d 625]; and see People v. Mattson, supra, 51 Cal.2d 777, 787, fns. 2 and 3, and p. 798; People v. Garabito (1966) 244 Cal.App.2d 549, 553 [53 Cal.Rptr. 152]; In re Van Brunt (1966) 242 Cal.App.2d 96, 103 [51 Cal.Rptr. 136].)
 [5] An indigent defendant is not entitled, as a matter of constitutional and statutory right, both to conduct his own defense and to be provided with the services of court-appointed counsel to advise and assist him in a subservient capacity in preparing for and during trial. (People v. Mattson, supra, 51 Cal.2d 777, 782 and 789- 796.)
 [6] Except insofar as the Legislature has prohibited specific proceedings in respect of a defendant who is not represented *84 by counsel, [fn. 2] a defendant may freely and intelligently waive his right to counsel (In re Martinez (1959) 52 Cal.2d 808, 811-813 [345 P.2d 449]); and the court cannot force a competent defendant to be represented by an attorney (People v. Mattson, supra, 51 Cal.2d 777, 788-789; and see People v. Crovedi, supra, 65 Cal.2d 199, 208; and People v. Shroyer, supra, 203 Cal.App.2d 478, 482).
 "Where a defendant charged with crime is unable to employ counsel, is not statutorily required to have counsel [see fn. 2 herein], and is competent to decide whether he desires counsel, the defendant during the proceedings before the magistrate and the trial court has as a matter of absolute right but two choices in the matter of a court-appointed attorney: he can accept representation by counsel (as most defendants with the ability to employ counsel have the good sense to do) or he can elect to represent himself. [7] If he makes the latter election, he assumes for all purposes connected with his case, and must be prepared to be treated as having, the qualifications and responsibilities concomitant with the role he has undertaken; he is not entitled either to privileges and indulgences not accorded attorneys or to privileges and indulgences not accorded defendants who are represented by counsel. (People v. Chessman (1951) 38 Cal.2d 166, 174 [2] [238 P.2d 1001].)" (People v. Mattson, supra, 51 Cal.2d 777, 793-794.)
 [8] "It is well settled law that if a defendant, during the course of the trial, becomes dissatisfied with the manner in which his counsel has handled his case and wishes to discharge counsel for that reason he has a constitutional right so to do [citation], subject to the supervisory powers of the trial court to see that such discharge does not result in an uninformed and unintelligent waiver of the right to counsel. [Fn. omitted.] [Citations.]" (People v. Johnson (1966) 241 Cal.App.2d 423, 437 [50 Cal.Rptr. 598].) [9] There is, however, "no constitutional right to an attorney who will conduct the defense of the case in accordance with an indigent defendant's whims." (People v. Nailor (1966) 240 Cal.App.2d 489, 494 [49 Cal.Rptr. 616]; and see People v. Hughes, supra, 57 Cal.2d 89, 98-99; People v. Stewart (1966) 240 Cal.App.2d 1, 6 [50 Cal.Rptr. 26]; People v. Evans (1963) 211 Cal.App.2d 534, 538-539 [27 Cal.Rptr. 304]; People v. McFerran (1962) *85 211 Cal.App.2d 4, 6-8 [26 Cal.Rptr. 914]; People v. Jackson (1960) 186 Cal.App.2d 307, 315 [8 Cal.Rptr. 849]; and People v. Mitchell (1960) 185 Cal.App.2d 507, 512 [8 Cal.Rptr. 319].) [10] "A defendant's right to a court-appointed counsel does not include the right to require the court to appoint more than one counsel, except in a situation where the record clearly shows that the first appointed counsel is not adequately representing the accused." (People v. Mitchell, supra, 185 Cal.App.2d 507, 512; and see People v. Evans, supra, 211 Cal.App.2d 534, 539; People v. McFerran, supra, 211 Cal.App.2d 4, 6; and People v. Jackson, supra, 186 Cal.App.2d 307, 315.)
 [11] Although under such circumstances the trial court is not required to substitute a second counsel for defendant, it should not accept the withdrawal or discharge of the court-appointed attorney unless it finds that the defendant freely and intelligently waived his right to counsel with an intelligent appreciation of its consequences. (People v. Douglas, supra, 61 Cal.2d 430, 434-435; People v. Kemp (1961) 55 Cal.2d 458, 463 [11 Cal.Rptr. 361, 359 P.2d 913]; In re Van Brunt, supra, 242 Cal.App.2d 96, 106; People v. Stewart, supra, 240 Cal.App.2d 1, 5; People v. McFerran, supra, 211 Cal.App.2d 4, 7; People v. Shroyer, supra, 203 Cal.App.2d 478, 482; People v. Jackson, supra, 186 Cal.App.2d 307, 315-316; and see In re Martinez, supra, 52 Cal.2d 808, 811-812; People v. Mattson, supra, 51 Cal.2d 777, 790, fn. 5 and 794; People v. Johnson, supra, 241 Cal.App.2d 423, 427; and People v. Evans, supra, 211 Cal.App.2d 534, 539.) The determination of this question "involves an exercise of discretion which, in the absence of a showing of abuse, will not be disturbed on appeal. (People v. Shroyer, 203 Cal.App.2d 478, 482 [21 Cal.Rptr. 460].)" (People v. McFerran (1962) 211 Cal.App.2d 4, 7 [26 Cal.Rptr. 914].)
 [12] A finding that the defendant is not capable of representing himself when supported by the record justifies the court in denying the defendant's demand that his attorney be discharged. (People v. Stewart, supra, 240 Cal.App.2d 1, 5; People v. Evans, supra, 211 Cal.App.2d 534, 539; People v. McFerran, supra, 211 Cal.App.2d 4, 7; and People v. Shroyer, supra, 203 Cal.App.2d 478, 483.) [13] Under such circumstances the objection that the defendant was deprived of the constitutional right to represent himself cannot be sustained in the absence of some other showing of an intelligent and competent waiver of counsel. (People v. Stewart, supra, 240 Cal.App.2d 1, 5.) *86
 Defendant contends that there could be no effective waiver of counsel in this case because the trial court expressly found that the defendant was not competent to defend himself. [fn. 3] On this state of the record, and in view of the fact that defendant at first stated that he objected to the procedure suggested by the court, and later indicated that he knew of no alternative but to accept that arrangement, it would have been more prudent to rule that his request was unqualifiedly denied. (People v. Stewart, supra, 240 Cal.App.2d 1, 5; People v. McFerran, supra, 211 Cal.App.2d 4, 7-8; People v. Shroyer, supra, 203 Cal.App.2d 478, 483.) It is recognized that in so doing the trial court would then be faced with the charge that it denied defendant the right to represent himself.
 In Mattson the court recognized that under certain circumstances the procedure followed by the trial court would be proper. "We are not saying that the trial court may not in its discretion, upon what it may determine to be good cause shown, permit a party who is represented by counsel to participate in the conduct of the case (see ante, footnote 3), or permit a defendant who appears in propria persona to employ an attorney to sit by him and advise him during the presentation of the case in court, or even appoint an attorney (with the latter's consent) to render such advisory services to an indigent defendant who wishes to represent himself (see, e.g., People v. Chessman (1951) supra, 38 Cal.2d 166, 174 [2]). These matters are within the sound discretion of the trial judge, who is in a position to appraise the courtroom situation and determine what procedure will best promote orderly, prompt and just disposition of the cause. [14] The court, however, should not permit a litigant both to have counsel and to actively participate in the conduct of the case (as by conducting examination of witnesses, interposing objections, arguing points of law or of fact, addressing the jury, etc.) unless the court on a substantial showing determines that in the circumstances of the case the cause of justice will thereby be *87 served and that the orderly and expeditious conduct of the court's business will not thereby be substantially hindered, hampered or delayed." (People v. Mattson, supra, 51 Cal.2d 777, 797.) This procedure has been used and sanctioned in other cases. (People v. Sanchez (1965) 232 Cal.App.2d 812, 816 [43 Cal.Rptr. 131]; People v. Evans, supra, 211 Cal.App.2d 534, 538; and see also People v. Darling (1962) 58 Cal.2d 15, 18-20 [22 Cal.Rptr. 484, 372 P.2d 316]; and People v. Jackson, supra, 186 Cal.App.2d 307, 317.)
 A review of the record reflects that in this case the appointed counsel not only advised the defendant but with his tacit and expressed consent conducted the proceedings. As noted, they consulted together during the impanelment of the jury. The attorney consistently made pertinent objections during the prosecutor's examination of witnesses. At the conclusion of the direct examination of the first witness for the prosecution the court stated: "You may cross-examine, Mr. Cretelli, or Mr. Weeks may on your behalf, whichever you wish." Following an unreported discussion between the attorney and the defendant, the former announced in open court, "He has asked me to do so, your Honor."
 He raised no objection when the attorney, in his presence, permitted a chemist to be called out of order, stipulated to the witness' qualifications as a chemist, and conducted the cross-examination and recross-examination of that witness. In response to the inquiry of the court the defendant indicated that he had no questions he wished to ask the chemist, and he gave a similar reply to the court's invitation to question the first witness after his examination by the prosecutor and public defender was resumed and finally concluded.
 The court permitted the defendant to participate in the discussions attendant to an offer of proof made by the prosecutor, and a motion made by the public defender on his behalf for the production of a witness.
 The attorney undertook the cross and recross-examination of the prosecution's third witness without comment from defendant. The witness was excused without an express offer to permit defendant to personally interrogate him, but the defendant subsequently advised the court in response to its inquiry that he had no questions of that witness.
 The attorney undertook to object to the admission into evidence of exhibits which had been produced by the prosecution. At the conclusion of these proceedings the following colloquy occurred: "The Court: I would like to say, do you have any *88 suggestions as to the conduct of your case? Is it going all right with you, Mr. Cretteli? You are in the position where you are your own attorney. Mr. Weeks is assisting you. Mr. Weeks has sort of taken over and very vigorously defended you. Are you satisfied with this arrangement? Mr. Cretteli: Yes, sir."
 The defendant expressly concurred in the attorney's decision to waive an opening statement on his behalf, and failed to register any disapproval of his indication that the defense had only two witnesses. At the conclusion of the testimony of these two witnesses the attorney indicated that the defense rested, and he then, out of the presence of the jury, presented motions on behalf of the defendant at the latter's request. At that point defendant affirmed that he concurred in the closing of his case and that he had nothing further to offer by way of evidence.
 The defendant was permitted to participate in the argument concerning the propriety of giving an instruction on entrapment. Without comment he permitted the attorney to argue his case to the jury, and he later advised the court that he had not wished to make any argument himself on his behalf. He was consulted and had no suggestions to make as to the form of the verdict. When the jury asked for an exhibit, which had been referred to but was not admitted in evidence, the defendant's assent was secured to the message sent to the jurors by the court.
 Subsequently, after the attorney made and argued a motion for new trial the defendant confirmed that it was made at his request. Following the denial of this motion, he ratified and confirmed the attorney's action in making a motion for proceedings for his commitment under the provisions of section 6451 of the Penal Code. When those proceedings were called for hearing the defendant unqualifiedly accepted representation by the assistant public defender.
 A review of the record reflects that defendant can concede no less than has been done by his counsel in the brief submitted to this court wherein it is stated: "Appellant in fact concedes that had the public defender been acting as his counsel, that appellant would have no legal standing to complain concerning the adequacy of the representation."
 On the record presented by this case it would exalt form over substance to hold that prejudicial error was committed because the court recognized the defendant's right to conduct his own defense in the face of a finding that he was not competent so to do. [15] "Meaningfully applied, the right to counsel includes the opportunity to receive 'effective aid in the *89 preparation and trial of the case.' (Powell v. Alabama, 287 U.S. 45, 71 [77 L.Ed. 158, 53 S.Ct. 55, 84 A.L.R. 527]; People v. Mattson, 51 Cal.2d 777, 790 [336 P.2d 937].)" (People v. Douglas, supra, 61 Cal.2d 430, 434.) Where, as here, the defendant has had the active assistance of able counsel, who conducted an active and zealous defense with the consent of the defendant and to his manifest satisfaction, there is no prejudicial error. (See People v. Hughes, supra, 57 Cal.2d 89, 99; In re Atchley, supra, 48 Cal.2d 408, 419; People v. Stewart, supra, 240 Cal.App.2d 1, 6; People v. Evans, supra, 211 Cal.App.2d 534, 539; People v. McFerran, supra, 211 Cal.App.2d 4, 8; and People v. Jackson, supra, 186 Cal.App.2d 307, 318; and Annotation 157 A.L.R. (1945) 1225 at p. 1226, as quoted with approval in People v. Mitchell, supra, 185 Cal.App.2d 507, 512 and People v. Garabito, supra, 244 Cal.App.2d 549, 554-555.)
 [16] Here the defendant tacitly consented to and manifested satisfaction with the proceedings conducted in his behalf by the assisting counsel. The situation is analogous to that where express consent to representation by the public defender or court-appointed attorney, which is bespoken after unsuccessful proceedings to terminate the relationship of attorney and client, precludes further objection that the defendant has been denied counsel of his own choosing or the right to represent himself. (People v. Stewart, supra, 240 Cal.App.2d 1, 5 and 6; People v. Jackson, supra, 186 Cal.App.2d 307, 313 and 318.)
 The following language from People v. Shroyer, supra, is pertinent: "At the time of pronouncement of judgment his case was presented not only by his attorney on his behalf but also by himself personally; each of them presenting arguments in opposition to the recommendation that he be sentenced to prison; and the court listened to and considered both arguments. Under the circumstances, what more could have been done had he not been given the services of an attorney, or in what manner he was deprived of a fair hearing because of the appointment of counsel, not only does not appear from the record but cannot be imagined." (203 Cal.App.2d 478 at p. 484.) In short, the defendant has not only had "effective aid in the preparation and trial of the case," but he has also been granted that to which he would not have been entitled had the court, as it might well have done, ordered the case to proceed unqualifiedly with the assigned counsel, namely, the right, albeit little exercised, to actively participate in the conduct of the case. No error appears. *90
 The foregoing disposes of the ancillary contention of defendant that he was prejudiced because he was denied a continuance to prepare after being deprived of representation by counsel. [17] A continuance should be granted to permit defendant to secure counsel of his own choice where it may be granted without disruption of the orderly processes of justice. (People v. Crovedi, supra, 65 Cal.2d 199, 208-209.) [18] It is axiomatic that the right to counsel includes an opportunity for counsel to consult with his client and to make reasonable preparations. (People v. Mattson, supra, 51 Cal.2d 777, 790, fn. 5; People v. Ware (1966) 241 Cal.App.2d 143, 148 [50 Cal.Rptr. 252].) [19] The granting of a continuance generally is a matter within the discretion of the trial court and will not be disturbed unless an abuse of discretion appears. (People v. Douglas, supra, 61 Cal.2d 430, 435-436.)
 That there had been preparation is manifest from the fact that a difference of opinion had developed between the defendant and the public defender concerning the strategy to be followed. [20] In the absence of a showing that the counsel "assisting" the defendant desired or needed a continuance, it was not an abuse of discretion to deny the defendant's request for further time to prepare to represent himself. (See People v. Wade (1963) 215 Cal.App.2d 49, 53 [29 Cal.Rptr. 822]; People v. DeLosa (1960) 184 Cal.App.2d 681, 684 [7 Cal.Rptr. 753]; and cf. People v. Kerfoot (1960) 184 Cal.App.2d 622, 645-646 [7 Cal.Rptr. 674].)
 [21] Furthermore, after the first day's proceedings, the court continued the trial for six days in order to give the defendant, with the assistance of counsel, an opportunity to subpoena the witnesses he desired. The examination of the defendant's first witness had not been concluded, and arrangements were made to furnish defendant with a copy of the transcript of the proceedings. Under these circumstances no abuse of discretion can be shown.
 Lack of prejudice is also reflected by the fact that the only witnesses subpoenaed by the defendant were those who testified to impeach witnesses for the prosecution. It would appear that the defendant after reflection acceded to the attorney's views concerning his planned defense.
 The request for an instruction on entrapment was properly refused
 At the trial counsel assisting the defendant requested the court to instruct the jury on the subject of entrapment. In *91 refusing this request the court referred to the law, as generally pronounced at that time, which precluded reliance on the defense of entrapment where participation in the prohibited transaction was denied. (See People v. Vasquez (1964) 224 Cal.App.2d 206, 208-209 [36 Cal.Rptr. 337], and cases cited.) The court rejected the suggestion that the defendant could assert inconsistent defenses as countenanced in People v. West (App. Dept. L.A. 1956) 139 Cal.App.2d Supp. 923, 926 [293 P.2d 166].
 Some six months after the verdicts were returned and after the motion for new trial was denied, the Supreme Court of this state overruled the decisions upon which the ruling of the trial court was predicated, and approving West held that a defendant may deny that he committed every element of the crime charged, yet properly allege that such acts as he did commit were induced by law enforcement officers. (People v. Perez (1965) 62 Cal.2d 769, 775-776 [44 Cal.Rptr. 326, 401 P.2d 934]; and see People v. Goree (1966) 240 Cal.App.2d 304, 308 [49 Cal.Rptr. 392], fn. 4; People v. Monteverde (1965) 236 Cal.App.2d 630, 640 [46 Cal.Rptr. 206]; People v. Marsden (1965) 234 Cal.App.2d 796, 799-800 [44 Cal.Rptr. 728].)
 The change in the law is not dispositive of the issue. Perez recognizes that it is not erroneous to refuse an instruction on entrapment where there is no evidence to support it. (62 Cal.2d at p. 775; accord: People v. Malotte (1956) 46 Cal.2d 59, 65 [292 P.2d 517]; People v. Sylvester (1966) 241 Cal.App.2d 46, 50-51 [50 Cal.Rptr. 263]; People v. Griffin (1962) 209 Cal.App.2d 557, 563 [26 Cal.Rptr. 311]; People v. Cline (1962) 205 Cal.App.2d 309, 311 [22 Cal.Rptr. 916]; People v. Richardson (1957) 152 Cal.App.2d 310, 318 [313 P.2d 651]; People v. Finn (1955) 136 Cal.App.2d 152, 155-156 [288 P.2d 281]; People v. Alamillo (1952) 113 Cal.App.2d 617, 621 [248 P.2d 421]; see also People v. Evans (1955) 134 Cal.App.2d 733, 736-737 [286 P.2d 368] insofar as not disapproved in People v. Perez, supra, 62 Cal.2d at p. 776, fn. 2; and cf. People v. Goree, supra, 240 Cal.App.2d 304, 309-311; People v. Monteverde, supra, 236 Cal.App.2d 630, 641-642; and People v. Marsden, supra, 234 Cal.App.2d 796, 798-799.) [22] The defendant cannot rely upon the alleged erroneous basis for the ruling if the giving of an instruction on the subject would be improper in any event. [fn. 4] (Low v. Warden (1888) 77 Cal. 94, 99 *92 [19 P. 235]; People v. Sears (1861) 18 Cal. 635, 636; and see People v. Selz (1955) 138 Cal.App.2d 205, 210 [291 P.2d 186].)
 The defendant has failed to point out the evidence on entrapment on which he relies. He appears to assert, as was done in the lower court by the public defender, that entrapment could be predicated upon an undercover officer's false representations that he wanted to be a big operator and get into selling, and upon the fact that the officer and others joined in getting the defendant to participate in the prohibited activities.
 An independent search of the record sustains the contention of the prosecution that there is no evidence to show other than that the defendant instigated the sales and was in no way subjected to undue or unconscionable pressure. (People v. Sylvester, supra, 241 Cal.App.2d 46, 51.)
 The case for the prosecution rested upon the testimony of an undercover officer for the narcotics detail as corroborated in part by the observations of another officer. His testimony reflects that he had first met defendant in the latter part of 1963 when he, as an undercover officer, stayed for a few days or a week at a waterfront hotel where the defendant resided. In the fall of 1964, about a month before the first sale by defendant, the officer established an acquaintance with one Mills and made purchases of narcotics from him. Mills introduced the officer to defendant in September a few days before the first sale. Mills and defendant were supposed to get heroin for the officer. They left the officer and a friend of Mills at the latter's apartment and allegedly went to fix a flat tire on defendant's car. The defendant subsequently telephoned back to Mills' room to the officer concerning the transaction, which apparently was not consummated.
 The first sale charged was initiated by advice telephoned from Mills that defendant was ready. In response to this call the officer went to Mills' apartment. Mills in turn telephoned defendant and Mills and the officer went to premises occupied by defendant and a Miss King where they had a discussion concerning the purchase of heroin. They were instructed to wait outside in defendant's car and did so for a couple of hours. They then went back up to get defendant, and the defendant, one Dan, Mills and the officer left in defendant's car. The defendant got out in the Fillmore district, and after *93 one unsuccessful foray, in the early morning hours, returned from a second with heroin. He delivered it to the officer in return for $60 previously paid to the defendant upon his representation that he would give his radio and stuff as security.
 The record reflects that the officer paid Mills $10 for the introduction to defendant. The officer, however, denied that he was using Mills as an agent to find people who were selling narcotics, and testified that so far as the officer knew Mills did not know his official status. The first indictment named Mills as a codefendant.
 The subsequent sales, unless tainted by the first, are clearly free from any inducement, much less entrapment by the officer. The evidence reflects that the sale in the late afternoon of September 18th was instigated by a phone call to the officer from the defendant; that the sale on September 24th was commenced by solicitation from one Dan who had been defendant's companion and had driven his car on the occasion of the first sale; and that the final sale on October 13th was solicited in a telephone call from the defendant to the officer.
 There is nothing in the foregoing evidence to justify a finding that the officer was party to an illegal or unjust scheme designed to foster rather than to prevent and detect crime (People v. Benford (1959) 53 Cal.2d 1, 9 [345 P.2d 928]); or that the intent to traffic in heroin originated in the mind of the officer rather than in the mind of the defendant (id., at p. 10). [23] "[W]here a defendant has a pre-existing criminal intent, the fact that when solicited by a decoy he commits a crime does not show entrapment [citations]" (id., at p. 10). Although Benford merely determined that the evidence was sufficient to sustain a finding that there was no entrapment (see People v. Goree, supra, 240 Cal.App.2d 304, 306-308), the application of the principles enunciated therein in the cases referred to above which have upheld a refusal to submit the issue to the jury, sustains the action of the trial court under the circumstances of this case.
 [24] As stated in Goree: "It seems obvious that each case in which a defendant claims entrapment and requests an instruction on the doctrine must rest on its own facts." (240 at p. 309-310.) Unlike Goree, the evidence in the instant case did not entitle the jury to believe that the defendant had nothing to do with the narcotics traffic except as a user, and that the sale to the officer was an isolated act not intended or designed by him until suggested by the officer (cf. id., at pp. 310 and 311). *94
 The record is silent as to just what was said at the original meeting several days before the sale, or at the defendant's apartment before the departure to secure the contraband. Nevertheless, the time interval between the meetings, the fact that the proceedings for the first sale were instigated by calls from Mills to the officer and the defendant respectively, the perseverance with which defendant sought to effect the sale, the assurance manifested in offering security for the money, and his subsequent activities in soliciting the officer combine to preclude any inference which would support a finding of entrapment.
 The same considerations distinguish the facts of this case from those in People v. Monteverde, supra, 236 Cal.App.2d 630, 638-642 and People v. Marsden, supra, 234 Cal.App.2d 796, 798-800. In the former case the evidence permitted the inference that the money offered and exhibited by the undercover agents induced the defendant, an ostensible law-abiding person of good reputation, who did not possess a stock of heroin, to secure the contraband from another for a commission payable to himself. (236 Cal.App.2d at pp. 641-642.) In the latter case the appellate court found that the evidence disclosed all the classic elements of an entrapment: "An original contact initiated solely by the police; repeated, and unsuccessful, attempts to consummate a sale by the use of ordinary methods of offers to purchase; a final appeal to friendship with a story of special urgency; a consummation effected only as a result of such abnormal pressure." (234 Cal.App.2d at pp. 798-799.)
 Since the evidence in this case was insufficient to sustain a finding of entrapment there was no error in the ruling of the trial court in refusing to consider such an instruction, even though such ruling was predicated upon a ground which was subsequently ruled untenable.
 The appeal from the order denying the motion for a new trial (1 Criminal 5019) is dismissed. The judgment is affirmed on the appeal from the judgment sentencing the defendant (1 Criminal 5455).
 Sullivan, P. J., and Molinari, J., concurred.
NOTES
[fn. 1] 1. Although this notice of appeal was dated the 11th day and apparently received by the clerk the 13th day after the rendition of judgment, it was filed by the clerk upon receipt, and no objection has been interposed by the People. The record reflects that the public defender indicated in open court that he was going to check the status of defendant's appeal, that no notice of appeal was filed by him, and that the 6th, 9th, 11th and 12th days following rendition of judgment were respectively two holidays and a weekend. Under these circumstances no purpose would be served by requiring a belated petition under the second paragraph of subdivision (a) of rule 31, California Rules of Court, and the appeal will be entertained as though the defendant had formally been relieved of any default if it was not in fact timely filed. (See People v. Mauldin (1960) 181 Cal.App.2d 184, 186, 187 [5 Cal.Rptr. 243].)
[fn. 2] 2. Pen. Code, 859a (defendant not represented by counsel cannot plead guilty before the magistrate); 860 (only "a defendant represented by counsel" can waive his right to a preliminary examination before the magistrate); 1018 (court cannot receive plea of guilty to crime for which maximum punishment is death or life imprisonment without possibility of parole unless defendant is represented by counsel).
[fn. 3] 3. Defendant further contends that he did not effectively waive his right to counsel because there was no compliance with the provisions of sections 284 and 285 of the Code of Civil Procedure. (See In re Martinez (1959) 52 Cal.2d 808, 813 [345 P.2d 449]; People v. Bouchard (1957) 49 Cal.2d 438, 440-442 [317 P.2d 971]; People v. Garabito (1966) 244 Cal.App.2d 549, 552-553 [53 Cal.Rptr. 152]; People v. Kerfoot (1960) 184 Cal.App.2d 622, 635-636 [7 Cal.Rptr. 674].) Although lack of notice or opportunity to be heard may defeat a purported substitution or withdrawal or discharge of an attorney, there is nothing to preclude such action where it occurs in open court with client, attorney, and adversary all present and consenting and is approved by the court. (See People v. Garabito, supra, 244 Cal.App.2d 549, 552; and Carrara v. Carrara (1953) 121 Cal.App.2d 59, 62-63 [262 P.2d 591].)
[fn. 4] 4. The fact that defendant submitted no specific instruction on the subject is disregarded in view of the state of the law at the time and the court's ruling. (See People v. Marsden (1965) 234 Cal.App.2d 796, 800 [44 Cal.Rptr. 728].)