Filed 2/14/22  P. v. Alvarez CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>JESUS ALVAREZ,<br><br>     Defendant and Appellant. | B310309<br><br>(Los Angeles County<br>Super. Ct. No. BA478545 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert Vanderet, Judge.  Affirmed.

Robert L. Hernandez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Rene Judkiewicz, Deputy Attorney General, for Plaintiff and Respondent.

————————————

A jury convicted Jesus Alvarez of assault with a deadly weapon and throwing an object at a vehicle with the intent to cause great bodily injury. He appeals the judgment arguing the trial court committed reversible error when it denied his second motion pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) without a hearing. He also asserts the court erred by improperly instructing the jury on the count for assault with a deadly weapon. The People concede the court erred but argue the errors were harmless. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

A. *Officers Arrest Alvarez for Throwing a Concrete Slab Through the Driver's Side Window of an Occupied Car*

Kenneth Hayashi was working as a ride-share driver on June 8, 2019. At about 1:30 a.m. he picked up passenger Kimani McGhee near the corner of Melrose Avenue and Kingsley Drive in Los Angeles. McGhee sat on the passenger side in the backseat of Hayashi's car. As he was about to drive away, Hayashi noticed a man with a gray shirt standing near his driver-side window. The man was holding a concrete block[1] in both hands over his head. Hayashi ducked as the man threw the block through the driver-side window. The block shattered the window, missed Hayashi and landed in the middle of the backseat next to McGhee. Hayashi sped away. He drove several blocks, pulled over and called 911. Hayashi explained what happened to the dispatcher and provided consistent details to responding Los Angeles Police Department Officers Joseph Orozco and Alex Yim. The officers

---

[1] Throughout the trial various witnesses referred to the block as a "rock" or a "brick" and also described the material as cement or concrete.

also talked with McGhee, who reported that the man who threw the rock was wearing a gray shirt and gray shorts or pants.

At about the same time the 911 dispatch operator received another call from someone at a bar on Melrose Avenue near Kingsley Drive.  The caller told dispatch that the police needed to come quickly because a security guard at the bar was holding a man who had used a brick to hit someone and break car windows. The caller said the detained man was wearing a gray shirt.  Officer Bustos responded to the call and detained the man who was being held by the security guard.  That man was Alvarez.

At approximately 2:00 a.m.  Officer Orozco drove McGhee to the location on Melrose where Officer Bustos had detained Alvarez and conducted a "field show-up."[2]  McGhee identified Alvarez as the man who threw the concrete block into Hayashi's car.  Officer Bustos arrested Alvarez.

Officers did not ask Hayashi to participate in the "field show up."  Instead, several days later Hayashi went to the police station to view a six-pack photographic line up.  Hayashi selected the photo of Alvarez and identified him as the man who threw the cement block through the window of his car.

B.    *Alvarez is Charged, and the Court Holds a* Marsden *Hearing*

Alvarez was charged with two felony offenses for throwing the cement block through Hayashi's window: assault with a deadly

---

[2]    Officer Orozco explained to McGhee that, "we're going to do something called a field show up . . . .  There's someone that's been detained right now.  They're in handcuffs.  Just because they're detained, doesn't mean they're guilty of anything.  It may or may not be the person that was involved in this incident.  We just need your help to figure out if this is the person or not."

weapon (count 1; Pen. Code, § 245, subd. (a)(1))[3] and throwing an object at a vehicle or an occupant of a vehicle with intent to do great bodily injury (count 2; Veh. Code, § 23110, subd. (b)). Deputy Public Defender Karyne Munoz represented Alvarez and appeared at the arraignment on September 10, 2019.

During the November 20, 2019 pretrial hearing the trial court noted discovery was complete, the last offer made by the People was nine years, and "this is . . . a third strike case." Munoz then informed the court that twice that week Alvarez told her he wanted to fire her and represent himself. The court had a brief exchange with Alvarez to clarify whether Alvarez wanted to represent himself or was requesting new counsel. The court excluded the Deputy District Attorney from the courtroom and held a *Marsden* hearing during which Alvarez explained he wanted to be sure Munoz used numerous reports and exhibits he thought were important in presenting his defense. After listening to Alvarez's concerns and Munoz's responses regarding her strategy for settlement discussions and trial, the court said to Alvarez, "Let this play out. [Munoz] has not ignored the stuff you're talking about. She's not ignoring it. She's on it. Let's see what the experts say, and let's see if that makes a difference in the offer or not . . . [and if] they don't change their offer, we'll be ready to set a trial date. Sound good?" Alvarez agreed, and the court concluded the *Marsden* portion of the hearing. During the remainder of the pretrial hearing the court stated if the case did not settle by the next hearing, December 20, 2019, trial would begin within 20 days of that date.

---

[3] Statutory references are to the Penal Code unless otherwise stated.

4

C.    *Alvarez's Trial is Delayed Due to the Covid-19 Pandemic*

On December 20, 2019 the trial court trailed the case to January 3, 2020 for a jury trial.  The court granted a defense pretrial motion on January 3, 2020 and continued the matter to January 31, 2020.  On January 31, 2020 the People withdrew their settlement offer, all counsel announced they were ready for trial, and the court set trial for February 6, 2020.  On February 6, 2020, over Munoz's objection, the court granted the People's motion to continue and reset the trial to March 25, 2020.  At the March 25, 2020 hearing Munoz informed the court that Alvarez would not waive time for trial.  Noting the spread of Covid-19 and the state of emergency declared by Governor Newsom, the court continued the trial to April 24, 2020.  The court issued similar continuances each month through July 2020.  On August 10, 2020 the court continued the matter for a week because Alvarez was quarantined due to the pandemic.

D.    *The Court Denies Alvarez's Second* Marsden *Motion Without a Hearing and Completes Pretrial Proceedings*

At the August 17, 2020 pretrial hearing all counsel again confirmed they were ready for trial.  The trial court referenced a new Covid-19 emergency order and continued the trial until September 23, 2020.  Munoz objected to the continuance and noted that Alvarez, who was in custody, asked her to file a habeas petition because his trial had been repeatedly delayed.  Munoz had the following colloquy with the court and Deputy District Attorney Brittany Phillips:

"Ms. Munoz:  Mr. Alvarez feels that because I have allowed his case to be put over for six months, when it was ready for trial, and I remain ready, that he would like the court to hear a

5

*Marsden* motion where he can potentially have a lawyer that is ready and proceed with his trial.

"The Court: He has a lawyer - -

"Ms. Munoz: He's not comfortable with my representation.

"The Court: He has a lawyer that's ready for trial already. And I've already heard a *Marsden* motion, and I'm not inclined to hear another one. The fact is, Mr. Alvarez, your attorney has been announcing ready every time.

"And because of the pandemic, there are no jury trials—none, zero, zippo, and—that are happening until September at the earliest. So what I suggest we do is come back some day the week of the 14th, Ms. Munoz.

"Ms. Phillips: And I would like to take the opportunity to let the defendant and counsel know, again, I've spoken with the defense counsel. I'm well aware that the defendant has waited for his trial for quite a while now.

"And because of that, I did approach counsel and ask for a counter offer on this case. The People made an offer of 8 years, which was rejected by the defendant.

"However, I did approach the defense counsel and say, given the time, is there something that the defendant is interested in? I can't make any promises, and I'm open.

"I'll discuss this with my boss . . . .

"The Court: Okay. Here's what I suggest since this is coming up now. Let's come back sooner rather than later so that—

"Ms. Munoz: Yes.

"The Court: --So you may have an opportunity to chat with Mr. Alvarez to see if there is anything that he would like to counter with. It appears that, you know—off the record.

6

"The Court: [To Alvarez] You need to talk to your attorney, and then come back—then your attorney will come back to the DA with a counter if you have one. Okay?

"The Defendant: All right. Thank you.…

"The Court: . . . Right now the offer stands at eight, but they're open to a counter offer. … So we'll come back on the 10th, see where we're at. If it doesn't resolve, we'll set a trial date.

"By then, we should know what's going on. It's simple, Mr. Alvarez. The virus numbers have got to go down to a point where we're able to bring in jurors. Right now, they're not there. So hopefully the trend is downward.

"The Defendant: Right.

"The Court: And we're going to be able to get started . . . . If we can't resolve this, we'll set it for trial and go from there.

"The Defendant: September 10th. Right?

"The Court: September 10th. . . ."

The August 17, 2020 minute order states, "Defendant orally requests a *Marsden* hearing. The court denies the request for hearing due to the defendant not showing any new evidence from prior *Marsden* hearing. The court informs the defendant that jury trials are delayed due to the Covid pandemic."

On September 10, 2020 the parties stipulated to hold the jury trial readiness hearing on September 29, 2020. Because Alvarez was in quarantine again on September 29, 2020, the trial court continued the readiness hearing to October 9, 2020.

Deputy Public Defender Adam Birka-White represented Alvarez at the October 9, 2020 and throughout the trial. Alvarez did not personally appear on October 9th as he was still in quarantine. The trial court set trial for October 19, 2020.

7

On October 19, 2020 the trial court informed Alvarez, Birka-White and Deputy District Attorney Brian Rosenberg that its indicated sentence for Alvarez was four years with credit for three. Alvarez discussed the offer privately with his counsel. The court asked for Alvarez's response and Birka-White reported, "We discussed it in detail. We . . . discussed the mathematics of the court's indicated that Mr. Alvarez would likely be released in approximately March of 2021 by my math, and he is not interested in the court's offer . . . . We'll be proceeding to trial." The court informed Alvarez that while it was his choice to reject the offer, he would be "facing 18 years" if he proceeded to trial. The court said the offer "will remain open if you want to think about that. Obviously it won't remain open once we begin jury selection." Birka-White responded, "I understand. Thank you." Alvarez made no complaint that day, nor any day after, that he was unsatisfied with Birka-White as his counsel. Jury selection began on October 20, 2020.

E.  *The Jury Convicts Alvarez on Count 1, Felony Assault with a Deadly Weapon, and the Misdemeanor of Throwing an Object at a Vehicle, the Lesser Offense Charged in Count 2*

*1. Presentation of evidence*

During the trial Hayashi identified Alvarez in the courtroom. Hayashi testified that on June 7, 2019 he saw Alvarez coming toward his car holding a broken piece of concrete over his head. Alvarez was wearing a gray T-shirt and looked very angry. When he was about two to three feet away Alvarez threw the block at Hayashi and shattered the driver's side window "like a bomb" causing glass to rain into the car over Hayashi's "body and clothing." Hayashi said, "I don't know if it touched [my] ear because I ducked instantaneously and stepped on the gas when he

8

threw the rock at me." If he had not ducked, Hayashi stated, the block would have "absolutely hit my head."

During his testimony, McGhee also identified Alvarez in the courtroom. McGhee stated that as soon as he sat in the backseat of the car he saw Alvarez about 10 feet away from Hayashi's window. Alvarez was wearing a gray shirt and looked angry as he approached the vehicle while holding a rock over his head. When Alvarez was close, he "catapulted" the rock through the driver's-side window shattering the glass. Hayashi leaned forward over the steering wheel as the rock came behind his head and landed in the back seat next to McGhee. McGhee was not injured, although he was covered in broken glass.

### 2. *Closing argument*

In his closing argument Rosenberg elaborated on the definition of a deadly weapon, stating it is "any object, instrument or weapon that is used in such a way that is capable of causing and likely to cause death or great bodily injury . . . ." Rosenberg told the jury they needed to determine whether Alvarez "use[d] this rock in such a way that it was capable of causing substantial injury." He continued, "you may be thinking, well, look, it's a brick; it's not a gun, it's not a knife, it's not a machete, it's nothing like that. But for the purposes of the law, a deadly weapon can be anything as long as it's used in such a way where it can really hurt somebody." Rosenberg gave examples of how an object that has an innocent purpose can be used as a deadly weapon, including a stapler as a "bludgeoning instrument" or, as used by the Joker in the movie *The Dark Knight*, a pencil to impale someone's eye. Rosenberg argued Alvarez took the cement slab and threw it with force through Hayashi's window, shattering the glass. Had the

9

brick hit Hayashi, it could have caused a "broken nose, broken eye socket, worse—he would have been in a very bad place."

### 3. *The verdict and sentence*

The jury found Alvarez guilty of felony assault with a deadly weapon in violation of Penal Code section 245, subdivision (a)(1), count 1. For count 2, the jury found Alvarez not guilty of the felony of throwing an object at a vehicle or an occupant of the vehicle with the intent to do great bodily injury but found him guilty of the misdemeanor lesser included offense in violation of Vehicle Code section 23110(A).

The court sentenced Alvarez to four years in state prison on count 1. On count 2 the court sentenced Alvarez to one year in jail but stayed the sentence pursuant to section 654. The court applied Alvarez's 1,198 days of in custody credit. Alvarez timely appealed.

## DISCUSSION

A. *The Court's Failure To Conduct a Second* Marsden *Hearing was Harmless Error*

1. *The court erred by not conducting a second* Marsden *hearing*

Criminal defendants are entitled to court-appointed counsel if they are unable to afford private counsel. (*Gideon v. Wainwright* (1963) 372 U.S. 335.) A defendant's constitutional right to counsel includes the right to have court-appointed counsel "discharged or other counsel substituted, if it is shown . . . that failure to do so would substantially impair or deny the right so guaranteed . . . ." (*People v. Mitchell* (1960) 185 Cal.App.2d 507, 512, quoting 157 A.L.R. 1225, 1226.)

10

This court reviews the trial court's decision to deny a defendant's motion to relieve counsel for an abuse of discretion. (*People v. Jones* (2003) 29 Cal.4th 1229, 1245.)  "[T]he trial court cannot thoughtfully exercise its discretion . . . without listening to [a defendant's] reasons for requesting a change of attorneys." (*Marsden, supra*, 2 Cal.3d at p. 123.)  Unless the trial court understands the grounds that prompted the request, the court has insufficient information to "intelligently deal with a defendant's request for substitution of attorneys . . . .  The defendant may have knowledge of conduct and events relevant to the diligence and competence of his attorney which are not apparent to the trial judge from observations within the four corners of the courtroom." (*Ibid*.)  A court that denies a defendant's motion for substitution of counsel based "solely on  . . . courtroom observations, despite a defendant's offer to relate specific instances of misconduct, abuses the exercise of his discretion to determine the competency of the attorney.  A judicial decision made without giving a party an opportunity to present argument or evidence in support of his contention 'is lacking in all the attributes of a judicial determination.'" (*Id.* at p. 124, quoting *Spector v. Superior Court* (1961) 55 Cal.2d 839, 843.)  It is reversible error for a trial court to deny a defendant's *Marsden* motion without conducting a hearing unless the appellate court concludes "beyond a reasonable doubt that [the denial] did not contribute to the defendant's conviction." (*Marsden, supra*, 2 Cal.3d at p. 126, quoting *Chapman v. California* (1967) 386 U.S. 18.)

During the August 17, 2020 pretrial hearing Munoz informed the trial court that Alvarez wanted a substitution of counsel.  Although Munoz stated Alvarez was dissatisfied because trial had been repeatedly delayed, Munoz also relayed that Alvarez was "not comfortable with [Munoz's] representation."  The

11

court interpreted Alvarez's complaint to be solely based on the trial continuances. Because the delays were caused almost entirely by the pandemic and were therefore unrelated to Munoz's performance, the court concluded no further discussion was necessary. The court did not hold a *Marsden* hearing and did not learn whether Alvarez had concerns that went beyond his frustration of being in custody for more than 14 months without a trial. The court abused its discretion when it failed to hold a *Marsden* hearing, and respondent concedes the court erred.

2. *The court's error was harmless*

If the trial court had held a *Marsden* hearing on August 17, 2020 and concluded that substitution of counsel was warranted, the court would have relieved Munoz as counsel and would have appointed a new lawyer for Alvarez.[4] While the court did not hold a *Marsden* hearing and did not substitute counsel, by the October 9, 2020 pretrial hearing Alvarez nevertheless was represented by new counsel, Birka-White.

Nothing in the record illuminates exactly when or why Birka-White began representing Alvarez. Munoz appeared on behalf of Alvarez at the September 29, 2020 hearing and agreed to continue the matter to October 9, 2020 because Alvarez was in quarantine due to Covid-19. Sometime between those two hearings, Birka-White took over as Alvarez's attorney. That

---

[4]    We do not mean to suggest there is evidence in the record to support the contention that Munoz engaged in conduct that would have justified the court relieving her, or that if the court had held a *Marsden* hearing that Alvarez would have presented any such evidence.

12

means that between 43 and 53 days after Alvarez made his second request for a *Marsden* hearing, he had a new attorney.

The People argue the trial court's error in failing to hold a second *Marsden* hearing was "either moot or harmless" because Alvarez "received what he wanted: a new appointed attorney other than Deputy Public Defender Munoz . . . ." In his reply brief Alvarez acknowledges he had new counsel no later than October 9, 2020 but asserts the court's failure to hold a *Marsden* hearing on August 17, 2020 was prejudicial error because settlement discussions were occurring in the intervening time, and "it is now impossible to determine beyond a reasonable doubt those reasons had no effect on the plea negotiations."

The record belies Alvarez's suggestion that he may have received more favorable settlement terms had he been appointed new counsel on August 17, 2020. At the conclusion of the August 17, 2020 hearing the trial court summarized the state of settlement discussions: "Right now the offer stands at eight [years incarceration], but they're open to a counter offer. . . . So we'll come back on the 10th, see where we're at." The record does not reveal how long Alvarez was in quarantine after that hearing. There is also no information regarding whether Munoz communicated with Alvarez during that time or whether she made a counteroffer to the People on his behalf. The record is clear as to the October 29, 2020 discussion with the trial judge, when Alvarez was represented by Birka-White. Irrespective of whatever prior terms the People may have offered or any counteroffer the People may have rejected, the court explained it was prepared to sentence Alvarez to four years with credit for time served, which put Alvarez's expected release roughly five months later in March of 2021. Alvarez rejected the court's offer.

13

Because: Birka-White replaced Munoz shortly after Alvarez requested a change in counsel; Alvarez never objected to Birka-White's representation; and the trial court did not provide its indicated sentence with Alvarez until October 29, 2020, when Birka-White represented Alvarez, the trial court's error in not holding a *Marsden* hearing on August 17, 2020 was harmless. We find beyond a reasonable doubt that the court's failure to hold a second *Marsden* hearing did not contribute to Alvarez's conviction.

B.    *The Court's Inclusion of Extraneous Language in the Instruction Regarding Inherently Dangerous Weapons was Harmless Error*

Alvarez asserts the trial court improperly instructed the jury regarding count 1, assault with a deadly weapon (§ 245 subd. (a)(1)). The court instructed the jury using, *inter alia*, CALCRIM No. 875 stating: "A deadly weapon is any object, instrument or weapon that is inherently deadly or dangerous or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury." Alvarez argues the court should have eliminated the words "that is inherently deadly or dangerous" from the jury instruction because the weapon in this case was a concrete block, which is not inherently deadly or dangerous. Alvarez contends he was prejudiced by the court's error because "it cannot be assumed that the jury here relied on the correct part of the instruction in making its finding regarding the deadly nature of the concrete block." The People concede the court erred in including the extraneous language in the jury instruction but assert the error was harmless.

This court reviews de novo an appellant's claim that a trial court committed instructional error. (*People v. Manriquez* (2005) 37 Cal.4th 547, 581.) If a defendant uses an object that is not

14

inherently dangerous in the commission of an assault, it is legal error for the court to instruct the jury regarding a "weapon that is inherently deadly or dangerous" because the instruction is not supported by the facts or evidence of the case. (*People v. Aledamat* (2019) 8 Cal.5th 1, 7-8 (*Aledamat*)). Whether the error is harmless is controlled by the "harmless beyond a reasonable doubt" standard in *Chapman*. (*Id.* at p. 9, *citing Chapman, supra*, 2 Cal.3d at p. 24.) Alvarez relies solely on *Aledamat* to support his contention that his conviction for assault with a deadly weapon should be reversed. Alvarez is incorrect.

In *Aledamat* defendant extended the blade of a box cutter and thrust it toward the victim as he threatened, "I'll kill you." (*Id.* at p. 4.) Defendant was charged with assault with a deadly weapon pursuant to section 245, subdivision (a)(1). The trial court instructed the jury using CALCRIM No. 875 and defined a deadly weapon as: "any object, instrument, or weapon that is inherently deadly or one that is used in such a way that it is capable of causing and likely to cause death or . . . great bodily injury." (*Ibid.;* see CALCRIM No. 875.) Regarding the weapon enhancement, the court instructed that "'a deadly or dangerous weapon is any object, instrument, or weapon that is inherently dangerous, . . . or one that is used in such a way that it is capable of causing or likely to cause death or great bodily injury.'" (*Ibid.*) "In his closing argument, the prosecutor argued that the box cutter was an 'inherently deadly weapon,' noting that 'you wouldn't want your children playing with' it." (*Id.* at p. 5.) The California Supreme Court found that a box cutter was not inherently dangerous and it was legal error for the trial court to include the extraneous language in CALCRIM No. 875 regarding an inherently dangerous weapon. However, the Supreme Court also found the error was harmless beyond a reasonable doubt under

*Chapman* because no reasonable jury could have failed to find "defendant used the box cutter in a way that is capable of causing or likely to cause death or great bodily injury." (*Id.* at p. 15) The Supreme Court found harmless error even though the prosecutor specifically, and incorrectly, argued the box cutter was inherently dangerous. (*Ibid.*)

The instructional error in this case is like that in *Aledamat*. However, one difference is that irrespective of the extraneous language in the jury instruction, the prosecutor in Alvarez's trial never argued to the jury that the cement block was inherently dangerous. Rosenberg took the opposite approach and provided a detailed explanation about how an object, that normally has an innocent purpose, such as a stapler, a pencil, or in this instance a cement block, can be a deadly weapon "as long as it's used in such a way where it can really hurt somebody." Rosenberg recounted how: Alvarez threw the cement block through the window of Hayashi's car; the block nearly missed Hayashi's head, which could have caused Hayashi severe injuries; glass showered the interior of the car; and the block landed next to McGhee. As was the case in *Aledamat*, because there was no reasonable way the jury in this matter could have failed to find Alvarez used the cement block in a way that was capable of causing, or likely to cause, death or great bodily injury, it is clear beyond a reasonable doubt that the trial court's error was harmless.

16

## DISPOSITION

The judgment is affirmed.


WISE, J.[*]


We concur:


SEGAL, Acting P. J.


FEUER, J.

---

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.